# Richmond

## Unemployment Compensation Commission of Virginia and John D. Jones v. Dan River Mills, Incorporated.

March 5, 1956.

Record No. 4476.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *J. Eldred Hill, Jr., Assistant Attorney General,* for the appellants.

*Meade, Talbott & Tate,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

The Unemployment Compensation Commission of Virginia and John D. Jones were granted an appeal from a decree of the Corporation Court of Danville reversing an order of the Commission awarding the claimant, Jones, unemployment compensation benefits (Virginia Code, 1950, Title 60, §§ 60-1 through 60-117, as amended).

The case developed as follows: Jones, an employee of Dan River Mills, Incorporated, filed a claim for unemployment compensation benefits under § 60-48. The claim was processed by a deputy commissioner pursuant to § 60-49, and was disallowed on the ground that Jones was not able to work and available for work as required by §60-46(c).

From this ruling Jones filed an appeal which was heard by an appeal tribunal established under § 60-51, where the decision of the deputy commissioner was reversed and the claimant held to be able and available for work and thus entitled to benefits. From this decision the mills appealed to the Commission where the decision was affirmed. The mills then filed a petition for appeal and judicial review to the Corporation Court of Danville where, upon a hearing, the decree complained of reversing the decision of the Commission, was entered.

█ We are not concerned with an evaluation of the facts upon this appeal. The finding of facts by the Commission, if supported by the evidence, and in the absence of fraud, is conclusive, and our jurisdiction is thus confined to questions of law. § 60-55.

█ The record discloses that claimant was last employed by Dan River Mills. During the period of his employment he had acquired experienced in various types of work. His employment was terminated on April 26, 1954, due to lack of work. When claimant was first employed by the mills in 1942 he worked on the third shift (12 p.m.–8 a.m.), but during this employment he had at one time or another worked on each of the three shifts operated at the mills.

In November, 1953, claimant suffered a heart attack or severe indigestion and was under a doctor's care. He was on leave of absence until some time in January, 1954. At the time of his illness he was advised by his physician that work on the third shift was detrimental to his health and that he should seek other hours of employment. Claimant notified his supervisor that he was unable to work on the third shift for the reason assigned, and as a result he was given work on the first shift (8 a.m.–4 p.m.).

Several months later work on the first shift terminated and claimant was offered a transfer back to the third shift. He informed his supervisor that he would accept the transfer if his doctor would sanction it. He went to his doctor for a check-up and asked if his condition had improved to the extent that he could safely accept work on the third shift. The doctor advised against the change and gave a written statement to the effect that work on the third shift would be detrimental to claimant's health. This was communicated to the supervisor, at which time Jones told him that he would accept work on any other shift and would perform any available work; whereupon, he was advised that no other work was available and he was separated from employment.

Subsequently Jones filed his claim for unemployment benefits and began a search for employment. The record shows that he contacted a number of employers in the Danville-Chatham area who could consider a man of his qualifications but was unsuccessful in locating work. He registered with the State Employment Service where he reported regularly but received no referrals. He was willing to accept any kind of work he was able to do.

Claimant's sole handicap was that his health would not admit of his working on the third shift. He was ready and willing to work on this shift if his doctor approved, and the record discloses that when the doctor informed him that he could work on the third shift he immediately resumed employment.

While there are a number of inquiries raised on this appeal they all relate to the principal question, *viz:* Is a claimant, in order to be eligible for unemployment compensation benefits, required, by virtue of the provisions of § 60-46(c), to be able and available for work which the Commission has found to be unsuitable for him?

The Commission found that claimant was able to work. This finding was based upon uncontroverted evidence. It was shown

that claimant was able to work on any of the three shifts but that work on the third shift would be detrimental to his health.

Section 60-46, as amended, reads:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the Commission finds that:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(c) He is able to work and is available for work."

The requirements of the Act, of course, are not met by a claimant whose ability to work and availability for work are so limited because of ill health that he is not able to accept some substantial employment. The Act was not intended as health insurance; but reason and justice demand that the words "able to work", as used in the statute, should mean no more than that an applicant possess physical and mental ability to perform some substantial, saleable service. The availability requirement of the Act is satisfied where a claimant, as in this instance, is willing, able and ready to accept suitable work which he does not have good cause to refuse. *Reger* v. *Adm'r., Unemployment Compensation Act*, 132 Conn. 647, 46 A. (2d) 844, 845.

Section 60-47, the disqualification section of the Act, prescribes penalties for claimants who have contributed to their unemployment status. The penalties consist of a reduction in benefits for a varying number of weeks. They are imposed for such conduct as leaving work without good cause (§ 60-47(a)); having been discharged for misconduct in connection with one's work (§ 60-47 (b)); or failure, without good cause, to apply for available, *suitable* work when so directed by the employment office or to accept *suitable* work when offered (§ 60-47 (c)).

When a claimant is offered *suitable* work and refuses to accept it he is subjected to a penalty. The section (60-47) contemplates that *suitable* work shall be offered and refused before any penalty attaches, and it further provides "&ast; &ast; &ast; In determining whether or not any work is suitable for an individual the Commission shall consider the degree of risk involved to his health, safety, morals, his physical fitness and prior training, his experience, his length of unemployment and the accessibility of the available work from his residence."

In the two cases coming before this Court in which availability for work has been treated we have limited the requirement of availability to *suitable work. U.C.C. of Va.* v. *Tomko, et al.,* 192 Va. 463, 65

S. E. (2d) 524; *Dan River Mills, Inc.* v. *U.C.C. of Va. and Carolyn P. Jones*, 195 Va. 997, 81 S. E. (2d) 620.

A practical test of the availability for work is the action of the employee in accepting or refusing to accept a job that comes within the provisions of the Act as *suitable* employment. An employee cannot, without good cause, refuse to accept *suitable* employment and claim benefit payments (*U.C.C. of Va.* v. *Tomko, supra*), but his right to the payment is unaffected by his refusal to accept work which is manifestly *unsuitable* in the light of existing circumstances. *Farrar* v. *Director of Division of Employment Security*, 324 Mass. 45, 84 N. E. (2d) 540, 543.

Under this remedial legislation a claimant is not required to be available for work which has been shown to be *unsuitable*. The problem of determining when work is suitable and when it is unsuitable, under the facts and circumstances of each particular case, has been delegated to the Commission, which, in this instance, has properly construed this humane legislation.

For these reasons the decree of the trial court is reversed and the order of the Commission reinstated.

*Reversed.*