## Alexandria

BELL ATLANTIC NETWORK SERVICES

v.

VIRGINIA EMPLOYMENT COMMISSION

and

LENIECE MATTHEWS

No. 0837-92-4

Decided July 20, 1993

COUNSEL

William L. Carey (Miles & Stockbridge, on brief), for appellant.

Paul S. Stahl, Assistant Attorney General (Mary Sue Terry, Attorney General; Lisa J. Rowley, Assistant Attorney General, on brief), for appellee Virginia Employment Commission.

No brief or argument for appellee Leniece Matthews.

OPINION

**FITZPATRICK, J.**—Bell Atlantic Network Services (employer) appeals a final order of the Arlington County Circuit Court affirming a decision of the Virginia Employment Commission (VEC) granting unemployment benefits to Leniece Matthews (claimant). Claimant was discharged for alleged misconduct in connection with employer's drug testing policy. Employer argues that the uncontradicted scientific evidence in the record made claimant's testimony incredible as a matter of law. On appeal, employer contends that the trial judge erred in finding that sufficient evidence supported the VEC's award, and that the trial judge improperly relied on claimant's credibility when that was not the basis for the VEC's award. Finding no error, we affirm.

Claimant worked as a general clerk for employer from June 9, 1980 through July 18, 1989. In May 1989, claimant began an extended leave of absence due to medical complications. She was permitted to return to work on June 12, 1989, but chose not to resume work until July 18, 1989. Immediately after reporting to her job, she was sent to employer's medical department and told that she was to provide a urine sample for a drug screening test. Claimant was shown a copy of the company's policy statement regarding drug screening but was not given a copy of this document. The policy statement "informed her that failure to give a valid specimen would be grounds for discipline up to and including discharge."

Claimant first surrendered her purse and other articles that she was carrying. She was then given a styrofoam container called a Franklin cup to take into the bathroom to collect her specimen. The Franklin cup contains a built-in thermometer strip which registers the temperature of the cup's contents within a range of 96.4 to 100.4 degrees Fahrenheit (°F.). The VEC found that the claimant "did as she was instructed and, after washing her hands and composing herself, she gave the cup to the nurse who then proceeded to 'dismantle' it."

When the cup was returned to the nurse, the built-in thermometer strip failed to register or change color to indicate a temperature of at least 96.4°F. The nurse then removed the thermometer from the cup and ran it under steaming hot water. The thermometer then registered above 96.4°F. Two additional thermometer strips were then placed in the specimen. Neither registered a temperature. These additional thermometers were then placed under hot water where they showed a reading within the test range. Claimant's body temperature was taken at that time using a standard oral thermometer and found to be 97.4°F. The specimen was not tested for its actual temperature or for drugs. The specimen was immediately discarded by employer's medical staff. Later that day, claimant was discharged for alleged misconduct for "failing to provide a valid specimen for testing."

In its decision of May 8, 1990, the VEC determined that employer failed to prove by a preponderance of evidence that claimant had in fact diluted her specimen or otherwise altered it. Her termination was not based on a finding of illegal drug use; rather, she was discharged because she failed to provide a valid sample for testing. The employer had the burden to prove that claimant engaged in misconduct by failing to provide a valid sample.

Claimant denied any wrongdoing and testified that she had provided the medical staff a sample "fresh from her body." The VEC did not find the scientific evidence persuasive. They found that only one degree separated claimant's body temperature (97.4°F.) from the minimum registering temperature of the built-in thermometer (96.4°F.). No evidence was presented to show the temperature of the hot water used to activate the thermometers, or to show that the thermometers registered at exactly 96.4°F. In addition, no evidence established the rate of heat dissipation from the "Franklin cup." However, recognizing that the "Franklin cup" is made of styrofoam like that used with coffee cups, the VEC deduced that, like coffee, the specimen contained in the

cup could have cooled between the time the specimen was produced and the time it was tested by the nurse.

The VEC also questioned why the specimen was never tested for its actual temperature or for its chemical composition to determine if it had been diluted "beyond the minimum scientific values applicable to human urine." They noted that "[t]he simple expedient of taking the temperature of the claimant's specimen by using a regular thermometer would have gone a long way to proving or disproving whether it was in fact valid." In short, the VEC found the scientific evidence in this case unpersuasive.

Pursuant to Code § 60.2-625,[1] employer appealed to the Circuit Court of Arlington County. The trial judge found that the VEC resolved a disputed question of fact in favor of claimant. Claimant testified that she gave a valid sample as requested. The employer presented scientific evidence primarily through the testimony of Dr. Anita Herbert, employer's medical director, and Maureen Foran, employer's nursing supervisor, contradicting claimant's testimony that she had given a fresh sample. The trial court found that, from the scientific evidence, the VEC

> could have concluded that it was impossible for the claimant (employee) to have given a valid sample. There was much other testimony relating to the giving of the test and the steps taken following that to determine whether the thermometer in the Franklin cup had registered properly. This evidence was all unfavorable to the claimant.
>
> Against this evidence the [VEC] had the testimony of the claimant that she gave a valid urine sample.

---

[1] Code § 60.2-625 provides, in pertinent part:

A. Within ten days after the decision of the Commission upon a hearing pursuant to § 60.2-622 has become final, any party aggrieved who seeks judicial review shall commence an action in the circuit court . . . . In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. Such actions and the questions so certified shall be heard in a summary manner at the earliest possible date. An appeal may be taken from the decision of the court to the Court of Appeals in conformity with Part Five A of the Rules of Supreme Court and other applicable laws.

The trial judge found that the VEC's finding was "supported by evidence" and that the court was without authority on appeal to disturb this factual finding.

■ "On review, [we] must consider the evidence in the light most favorable to the finding by the Commission." *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554-55 (1987). Code § 60.2-625 sets forth the standard of "judicial review" for appeals from the decisions of the VEC. "[I]n such cases . . . the Commission's findings of fact, if supported by evidence and in the absence of fraud, are conclusive." *Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). The VEC's findings of fact need only be "supported by evidence" for them to be binding on appeal, unless we conclude that no evidence supports the findings or that they were obtained by fraud. *See Unemployment Compensation Comm'n v. Dan River Mills, Inc.*, 197 Va. 816, 817, 91 S.E.2d 642, 643 (1956); *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 613, 249 S.E.2d 180, 183 (1978).

■ Employer argues that, although conflicting evidence was presented to the VEC, the certainty of the scientific evidence presented rendered the claimant's denial of misconduct incredible. We disagree. It is well settled that "[a]n employee's refusal to obey a reasonable directive of his or her employer may constitute misconduct so as to disqualify that employee from unemployment benefits." *Helmick v. Martinsville-Henry County Economic Dev. Corp.*, 14 Va. App. 853, 859, 421 S.E.2d 23, 26 (1992). However, to establish misconduct employer had the burden of proving that the claimant deliberately or willfully violated a company rule. *Branch*, 219 Va. at 611-12, 249 S.E.2d at 182; *see also* Code § 60.2-618(2). The VEC found that the claimant "did as she was instructed" and that insufficient evidence was provided to prove misconduct.

■ Employer's argument goes to the weight that the scientific evidence and the testimony of employer's medical personnel should be accorded. However, it is peculiarly the function of the fact finder, in this case the VEC, to determine what weight, if any, should be accorded to such evidence. "As the factfinder, the Commission is charged with the responsibility of resolving questions of credibility and of controverted facts." *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd*, 9 Va. App. 225, 385 S.E.2d 247 (1989) (en banc). "The testimony of expert witnesses is not exclusive,

and does not necessarily destroy the force or credibility of other testimony. The [fact finder] has a right to weigh the testimony of all the witnesses, experts and otherwise." *Pepsi-Cola Bottling Co. v. McCullers*, 189 Va. 89, 99, 52 S.E.2d 257, 261 (1949); *Saunders v. Commonwealth*, 242 Va. 107, 115, 406 S.E.2d 39, 43, *cert. denied*, 112 S. Ct. 386 (1991).[2] We do not suggest that scientific evidence can never render a witness' testimony inherently incredible. Rather, we hold that under the facts of this case, evidence presented below supports the VEC's decision that the scientific evidence was not determinative of misconduct.[3]

The trial judge properly relied on the VEC's implicit credibility determination of claimant's testimony. There was no indication that the VEC considered claimant's testimony anything other than credible, and there was no finding that she was untruthful. To the contrary, the VEC specifically found that "[s]he did as she was instructed." The testing procedures used by employer to determine validity of the sample were questioned by the VEC because employer failed to demonstrate that the "Franklin cup" registered at exactly 96.4°F., or that the cup retained heat for a sufficient period of time. Additionally, employer failed to use other basic scientific procedures (using a standard thermometer and testing the specimen for chemical composition) that would have determined the specimen's validity. We find that the VEC articulated a reasonable basis for its doubt as to the accuracy of the employer's scientific evidence and, therefore, we conclude that such evidence did not render claimant's testimony inherently incredible as a matter of law.

For the reasons set forth above, we find no error in the trial court's order affirming the decision of the VEC awarding unemployment benefits to claimant. Accordingly, we affirm.

*Affirmed.*

Barrow, J., and Duff, J.,* concurred.

---

[2]  The record does not indicate that employer's witnesses were offered or qualified as expert witnesses.

[3]  We look only to the evidence presented in the record before us. While employer's counsel attempted to clarify the reliability and operation of the testing procedure and device used in this case, appellate argument cannot be used to supplement the factual record.

*  Retired Judge Charles H. Duff took part in the consideration of this case by designation pursuant to Code § 17-116.01.