## CIRCUIT COURT OF THE CITY OF WINCHESTER

Sandra K. Sentz

v.

National Fruit Product Co. and
The Virginia Employment Commission

December 9, 1993

Case No. (Chancery) 93–148

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Plaintiff's Petition for Judicial Review of a decision of the Virginia Employment Commission and the Defendants' Motion to Dismiss. Upon consideration of the record and the argument and memoranda of counsel, the Court has made the following decision to dismiss this case.

### I. *Statement of Material Proceedings*

The following facts are established in the record of this case.

Sandra Sentz filed a claim for unemployment benefits on November 20, 1992, and has been disqualified from receiving unemployment benefits by the Virginia Employment Commission (hereinafter VEC) on the grounds that she voluntarily left her employment without good cause. She has filed a timely Petition for Judicial Review of this decision.

Ms. Sentz worked for National Fruit as a label machine operator beginning October 8, 1986. She was a seasonal employee and worked five days per week in season, and her final rate of pay was $7.63 per hour. *Transcript*, pp. 4, 19.

Ms. Sentz suffered a work-related back injury on April 6, 1992, and was never able to return to work full-time after that. She filed for Workers' Compensation but was initially denied in May, 1992. *Transcript*, p. 5. On April 8, 1992, Ms. Sentz was placed on medical leave by National Fruit through August 24, 1992, at which time she was cleared by her doctor to resume light duty work, as long as she wore a back brace. She was then permitted to take a two-week vacation beginning August 25, 1992, because she was still experiencing back problems. *Transcript*, pp. 8, 20.

She then was forced to take several more weeks off from work because of a hysterectomy operation and was not approved by her doctor to return to work until October 14, 1992. *Transcript*, pp. 8, 22.

Ms. Sentz did not return to work in mid-October, because she submitted a resignation on October 6, 1992, as part of a workers' compensation settlement between her and her employer. As part of the settlement, National Fruit agreed to pay the medical bills she had already incurred and would continue to provide medical coverage for up to one year. In return, National Fruit required that she submit a conditional resignation whereby she would resign if the workers' compensation settlement was approved, which it was. *Transcript*, pp. 5–6, 10–11, 13, 19, 25. Commission Exhibit # 9.

Ms. Sentz related that she accepted her employer's settlement offer because she had mounting medical bills from her injury that she was unable to pay and because her medical providers had threatened to discontinue treating her unless they were paid. *Transcript*, p. 5. She also wanted to get the settlement in writing because one doctor had told her she would still be allowed to come in for treatment as long as there was a possibility of payment. *Transcript*, pp. 6–7.

She stated that, as of the time of her unemployment appeals hearing, National Fruit had paid approximately $12,000.00 in medical bills pursuant to the settlement and that there were still other bills that had not yet been paid, and all of these bills would have gone unpaid otherwise. *Transcript*, pp. 33–34. The Employer Representative, Kim Harper, said that she was not privy to the negotiations of the settlement, but concurred that the above was her understanding as to how it was offered. *Transcript*, pp. 19, 25.

Ms. Sentz added that she also was concerned about her position at work, as she would no longer be able to do heavy labor or her normal job, only light duty work, of which there was little available. *Tran-*

*script*, p. 13. She said that she did not wish to resign, but, if she did not accept the settlement, that she feared that her workers' compensation claim would be denied, her medical bills would go unpaid, and that she might not have received further medical treatment. *Transcript*, p. 6.

## II. *Conclusions of Law*

The scope of the judicial review of the decision of the Virginia Employment Commission is governed by Virginia Code § 60.2–625, which provides that "the findings of the Commission as to the facts, if supported by evidence in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." In *Shifflett v. V.E.C.*, 14 Va. App. 96, 98, 414 S.E.2d 865 (1992), the Court of Appeals reviewed the principles governing judicial review of the decisions of the Virginia Unemployment Commission.

> "The Commission's findings of fact, if supported by evidence and in the absence of fraud, are conclusive." *Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985) . . . .
>
> Under Code § 60.2–618(1), an individual is disqualified from receiving benefits if the commission finds that the employee is unemployed because he or she left work voluntarily and without good cause. As the commission noted in its decision in this case, it "has consistently held that a claimant leaves work voluntarily without good cause unless the reason for leaving is based upon some legal premise or is of such a compelling and necessitous nature as would leave her no other reasonable alternative than quitting her job." "It is well settled that where the construction of a statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts." *Dan River Mills, Inc. v. Unemployment Compensation Comm'n*, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954).

In *Lee v. V.E C.*, 1 Va. App. 82, 85, 335 S.E.2d 104 (1985), the Court of Appeals discussed the meaning of "good cause" for the employee's leaving employment:

> An individual is disqualified for unemployment benefits where the VEC finds that the individual left work voluntarily without

good cause. Code § 60.1–58. The phrase "good cause," as used in this statute, has not been specifically defined by the legislature or the Supreme Court. The VEC, however, has had ample opportunities to interpret "good cause." In the present case, the appeals examiner set out the VEC standard as follows:

"The Commission has adopted and held firmly to the premise that an employee, who for some reason, becomes dissatisfied with his work, must first pursue every available avenue open to him whereby he might alleviate or correct the condition of which he complains before relinquishing his employment. Stated in other terms, the claimant must have made every effort to eliminate or adjust with his employer the differences or conditions of which he complains. He must take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment."

In any case arising under the Virginia Unemployment Statute, the claimant bears the burden of proving good cause for leaving work. The determination of whether an employee's behavior in leaving her employment bars her from receiving benefits is a mixed question of law and fact and therefore reviewable by a court. *Shuler v. Virginia Employment Comm'n*, 9 Va. App. 147, 149, 384 S.E.2d 122 (1989).

In *Umbarger v. VEC*, 12 Va. App. 431, 404 S.E.2d 380 (1991), the Court of Appeals set out a two part test to determine whether an employee left her employment with good cause. First one must look at the reasonableness of the employee's concern. Second, one must determine whether the employee made all reasonable efforts to resolve the dispute. The standard in both is that of a reasonable employee. *Id.* at 435–36.

The purpose of the Virginia Employment Compensation Act is to provide temporary financial assistance to unemployed persons as protection against economic dislocation. *Unemployment Comp. Comm'n v. Collins*, 182 Va. 426, 438, 29 S.E.2d 388 (1944). The Act should be liberally construed to effect its beneficent aims, and exemptions should be strictly construed against the employer. *Virginia Employment Comm'n v. AIM Corp.*, 225 Va. 338, 346, 302 S.E.2d 534 (1983).

The VEC concluded that Ms. Sentz became unemployed when she accepted National Fruit's Workers' Compensation settlement offer on

October 6, 1992, which conclusion was correct. The parties agreed that the last day she physically worked was April 6, 1992, and she was on medical leave from April 8, 1992, through October 6, 1992. An employee may not be able to actually work for a variety of physical, mental, and emotional reasons, and the employer may elect to retain the employee until the debilitating condition has abated and he returns to work. During the hiatus of occupational inactivity, the employee is still employed insofar as unemployment law is concerned.

In *Unemployment Comp. Comm'n v. Dan River Mills, Inc.*, 197 Va. 816, 819, 91 S.E.2d 642 (1953), the Supreme Court held:

> The requirements of the Act, of course, are not met by a claimant whose ability to work and availability for work are so limited because of ill health that he is not able to accept some substantial employment. The Act was not intended as health insurance; but reason and justice demand that the words "able to work," as used in the statute, should mean no more than that an applicant possess physical and mental ability to perform substantial, saleable service.

This comports with the general rule stated by the editors of 76 Am. Jur. 2d, *Unemployment Compensation*, § 124:

> The requirement that a claimant be available for work as a prerequisite for unemployment benefits is intended to preclude payment of benefits to persons who because of illness or physical disability withdraw from regular employment. Thus, inasmuch as an unemployment compensation statute is not health insurance legislation, and its benefits are extended only to persons available to work and not to ill employees during periods of illnesses, a claimant is not entitled to benefits where his physical condition renders him unavailable for substantial employment.

To be eligible for benefits, the claimant must be "able to work . . . [and be] . . . available for work." Virginia Code § 60.2–612(7)(a). In this case, the petitioner became unemployed as contemplated by the Act on October 6, 1992, as found by the commission.

The dispositive issue presented here is whether Ms. Sentz' acceptance of National Fruit's workers' compensation settlement offer constituted either an involuntary leaving or good cause for her voluntarily leaving her job, assuming her resignation was the proximate cause of

her separation from her employment. The VEC has apparently not previously considered the precise situation presented by an employee's resigning as part of a Workers' Compensation settlement. In denying Ms. Sentz, the Special Examiner noted that National Fruit did not explicitly threaten to terminate her employment, they only made her a tempting offer which she could have declined. There was no evidence that she was confronted with probable or imminent lay off. In fact, the employer is prohibited by law from taking retaliatory action against an employee, because the employee claims benefits under the Workers' Compensation Act. Virginia Code § 65.2–308.

In the present case Ms. Sentz missed more than five straight months of work following a work related back injury, the recovery from which was compounded by her hysterectomy. She had filed a Workers' Compensation claim that was initially denied. She was incurring medical bills that were going unpaid, and her medical providers were threatening to discontinue treating her unless they were paid. She also would have been unable to perform her normal duties at work, as she was cleared by her doctor only for light duty and only as long as she wore a back brace. It was under these circumstances that she accepted National Fruit's Workers' Compensation settlement offer. They agreed to pay the medical bills she had already incurred and to continue to cover her bills for up to one year. These were substantial benefits to the Petitioner. However, as *quid pro quo* the employer asked that she submit a resignation from employment conditioned upon the Industrial Commission's acceptance of her settlement. The Industrial Commission approved settlement as being in the best interests of the Petitioner. *See* Virginia Code § 65.2–701(A). The health insurance and compensation potentially available to Sentz in this case because of her industrial accident were those benefits provided under the Workers' Compensation Act, and she has received those benefits pursuant to her settlement. Her resignation incident to the workers' compensation settlement was voluntary and without good cause as contemplated by the Act.

There is evidence to support the decision of the Commission, and the law has been correctly applied to the facts by the Commission. Therefore, the decision of the Commission should be affirmed.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that Defendants' Motion to Dismiss is granted, and this case is dismissed.

The Clerk is directed to send a copy of this order to Counsel for the parties. This is a final order, and the Clerk is directed to place this file among the ended causes.