COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Fitzpatrick
Argued at Richmond, Virginia


LINDA S. FRAZER
                                        OPINION BY
v.      Record Nos. 1699-95-2 and   JUDGE JOHANNA L. FITZPATRICK
                1975-95-2              OCTOBER 29, 1996

JAMES DOUGLAS FRAZER


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    William R. Shelton, Judge

            Gail H. Miller; John Randolph Smith (Smith &
            Miller, P.C., on briefs), for appellant.

            Murray J. Janus (Deanna D. Cook; Bremner &
            Janus, on brief), for appellee.



        Linda S. Frazer (wife) appeals the trial court's decisions
on equitable distribution, spousal support, and child support.
She argues, inter alia, that the trial court erred in:  (1)
valuing the business of James Douglas Frazer (husband); (2)
dividing the parties' Merrill Lynch accounts; (3) crediting
husband with his separate property; (4) dividing the parties'
Harmony Hills property; (5) ordering each party to pay fifty
percent of extraordinary medical expenses for their son; (6)
failing to award wife additional pendente lite spousal support
and awarding permanent spousal support beginning one month after
entry of the final decree; (7) determining husband's gross income
for spousal support purposes; (8) calculating spousal support;
(9) modifying the child support award after wife had appealed the
final decree to this Court; (10) including wife's spousal support

in her income for child support purposes; (11) the distribution to husband of his First Penn life insurance policy valued at $12,000; (12) the division of the cash value of a life insurance policy owned by husband; and (13) the exclusion of the $870 life insurance premium from the marital estate. For the following reasons, we remand to the trial court for further proceedings in accordance with this opinion.

### BACKGROUND

The parties were married on December 16, 1978. After their marriage, husband adopted wife's daughter from her first marriage, and their son Ben was born on February 5, 1980. The parties separated when husband left the marital residence on October 7, 1992.

Husband filed a bill of complaint for divorce on December 31, 1992. A _pendente_ _lite_ hearing was held January 20, 1994, and the trial court awarded wife custody of the parties' son, $1,704 per month in child support, and $1,000 in spousal support for three months. Evidence on equitable distribution and support issues was taken by deposition, and each party submitted exhibits to the trial court.

The evidence established that, when the parties married in 1978, husband worked for Litton Industries. In 1984, husband left Litton, and the parties started Frazer Sales & Associates, Inc., with husband as the sole shareholder. Husband's monetary contributions to the marriage were far greater than wife's. His

2

monthly salary was approximately $18,000. Husband's nonmonetary contributions included coaching Ben's soccer team, cleaning the house, and maintaining the yard. Wife's nonmonetary contributions to the marriage included maintaining the home, cooking, caring for the children, and doing the family's laundry and shopping. She also was involved in community activities, helped husband with his business, and entertained his clients. The standard of living established during the marriage was high. The parties lived in a large home and owned luxury vehicles, a sport fishing boat, and a condominium in Hampton, Virginia.

The trial court issued its first letter opinion on October 6, 1994, and a subsequent letter opinion on October 28, 1994, both resolving issues of equitable distribution and child support. The court held a hearing on February 2, 1995 to consider the parties' requests for division of the marital assets. The final letter opinion dated March 3, 1995 resolved the issues of equitable distribution, spousal support, and child support. A final decree of divorce was entered July 7, 1995, and incorporated the letter opinions of October 28, 1994 and March 3, 1995.

Wife appealed the final decree to this Court on August 1, 1995. On August 3, 1995, the trial court reduced husband's child support obligation to comply with the new legislative guidelines enacted July 1, 1995. On August 30, 1995, wife noted her appeal of the August 3, 1995 order. By order of this Court dated

September 19, 1995, the two appeals were consolidated for briefing and argument.

## VALUATION OF HUSBAND'S BUSINESS

Husband is the sole stockholder of Frazer Sales & Associates, Inc., a manufacturer's representative business. Wife's expert, who was qualified in valuing similar businesses, valued husband's business at $423,500 and prepared a detailed written report. In evaluating the business, wife's expert relied upon the business' tax returns and information obtained from wife about the history of the business until she left the business in 1991. He also considered the customers and the general operation of the business. Wife's expert had no contact with husband, his employees, or customers in gathering information about the business.

Husband's expert, the accountant for the business, reviewed corporate books and records and had prepared the business' 1993 tax return. In determining the value of the business, he examined its capital assets and current income and expenses. Husband's expert valued the assets of the business at $75,000 and opined that the business had "perhaps as much as $150,000.00 in value." Husband's expert emphasized the personal nature of husband's relationships with his clients and the importance of husband's participation to the business' continued success. Additionally, husband testified that he had worked twenty-six years in developing his relationships with his two customers and that the business would have no value if he was not part of the company. The trial court accepted husband's evidence and valued

the business at $150,000.

Wife argues that the trial court erred in accepting husband's expert's value of Frazer Sales and in rejecting wife's expert's detailed analysis.

"Conflicting expert opinions constitute a question of fact . . . ." McCaskey v. Patrick Henry Hosp., 225 Va. 413, 415, 304 S.E.2d 1, 5 (1983). The trial court's "province alone, as the finder of fact, [is] to assess the credibility of the witnesses and the probative value to be given their testimony." Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991). In determining the value of marital property, "'the finder of fact is not required to accept as conclusive the opinion of [any] expert.'" Stratton v. Stratton, 16 Va. App. 878, 883, 433 S.E.2d 920, 923 (1993) (quoting Lassen v. Lassen, 8 Va. App. 502, 507, 383 S.E.2d 471, 474 (1989)). Additionally, the trial court, as fact finder, "'has a right to weigh the testimony of all the witnesses, experts and otherwise.'" Bell Atlantic Network Servs. v. Virginia Employment Comm'n, 16 Va. App. 741, 746, 433 S.E.2d 30, 33 (1993) (emphasis added) (quoting Pepsi-Cola Bottling Co. v. McCullers, 189 Va. 89, 99, 52 S.E.2d 257, 261 (1949)).

In the instant case, the trial court accepted the valuation of husband's expert after weighing the valuations presented by both experts and the basis for each expert's opinion. Husband's expert was clearly familiar with the daily workings of the business and its records and assets, and based his opinion in

6

part on the importance of husband's personal contributions to the success of the business. Although wife's expert had valued similar businesses and prepared a detailed analysis of the business' value, he relied primarily on outside information obtained from wife. The trial court was not required to accept his valuation and could "weigh the testimony of all the . . . experts." Bell Atlantic, 16 Va. App. at 746, 433 S.E.2d at 33. Under these circumstances, the trial court was not plainly wrong in accepting the valuation of husband's expert rather than that of wife's.

## MERRILL LYNCH ACCOUNTS

In wife's Exhibit 1 submitted May 3, 1994, she listed three Merrill Lynch accounts totaling $132,827 as marital assets: (1) a $69,168 account in the name of husband's business; (2) a $10,360 account in husband's name; and (3) a $53,299 account in wife's name. Husband testified in his deposition on April 27, 1994 that he had two accounts with Merrill Lynch, one personal and one corporate, and that the parties shared a joint bond account. However, in husband's Exhibit 4 submitted May 24, 1994 and during his deposition taken that day, he indicated a single Merrill Lynch account in wife's possession with a value of $132,827. In the trial court's first letter opinion dated October 6, 1994, the court classified all of the accounts as marital property and valued them at $132,827.

On October 18, 1994, wife filed a motion to reconsider,

7

arguing that husband omitted certain investments from his exhibit. She submitted an account statement that showed an additional value in husband's personal Merrill Lynch account of $33,180, dated November 27, 1992, two years before either husband or wife submitted exhibits to the court. At the October 20, 1994 hearing, the trial court refused to hear additional evidence regarding the accounts and ruled that "there must be a limit on the time in which evidence can be submitted." In its final letter opinion of March 3, 1995, the trial court assigned the value of the accounts--$101,101 to wife and $31,726 to husband. In the final decree entered July 7, 1995, the court ordered the parties to "sign whatever papers are necessary to effectuate the transfers of vehicles, partnerships and other property," and ordered wife to pay husband a monetary award of $31,726.

Wife contends that the trial court erred in refusing to allow her to present additional evidence of the value of the Merrill Lynch accounts after the evidence was concluded because husband misrepresented the value of his personal Merrill Lynch account by omitting certain investments. A trial court "may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value." Mosley v. Mosley, 19 Va. App. 192, 195, 450 S.E.2d 161, 163 (1994). Although the trial court gave wife ample opportunity to present evidence of the value of the Merrill Lynch accounts, the record fails to show when the report dated November 27, 1992, became known to or was

8

available to the wife. The record shows that although husband made no misrepresentations regarding the value of his personal Merrill Lynch account, he did fail to disclose the existence or value of a personal account of $33,180, dated November 27, 1992. Because the classification and evaluation of the Merrill Lynch accounts must be reviewed on remand, no rationale exists for excluding the additional account from equitable distribution.

Wife also argues that the trial court erred in failing to determine the actual ownership of each account. Code § 20-107.3(A) provides, in pertinent part, as follows:

> Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce from the bond of matrimony, or upon the filing with the court as provided in subsection J of a certified copy of a final divorce decree obtained without the Commonwealth, the court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3.

(Emphasis added). "Code § 20-107.3 details the steps which a trial court must follow in determining the equitable distribution of property. The court must first determine the legal title as between the parties and the ownership and value of all property. The court must also determine whether the property is marital or separate property." Robinette v. Robinette, 4 Va. App. 123, 128, 354 S.E.2d 808, 810 (1987) (emphasis added). In dividing the

9

property of divorcing parties, "the court shall have no authority to order the division or transfer of separate or marital property which is not jointly owned."  Code § 20-107.3(C) (emphasis added).

In the instant case, the record fails to show that the trial court followed the steps required by Code § 20-107.3(A) in dividing the Merrill Lynch accounts.  Although the trial judge properly classified the accounts as marital property and determined the total amount in the accounts to be $132,827, the court failed to make specific findings about how many accounts existed, what each account was worth, and who owned which accounts.  Wife's exhibit indicated three separate accounts totaling $132,827, one titled in her name, one in husband's name, and one in the name of the business.  Husband indicated that he had two accounts with Merrill Lynch, one titled in his name and one in the name of the business.  However, husband also testified that wife was in possession of one Merrill Lynch account with a value of $132,827.  Thus, because the evidence is in conflict about who owned which accounts and the trial court failed to make any specific findings regarding ownership of the accounts, on remand, the trial court must reexamine these accounts, determine the ownership of the accounts, and then divide the account assets in accordance with Code § 20-107.3.

## HUSBAND'S SEPARATE PROPERTY

Before the parties married in 1978, husband worked for

Litton Industries and had a retirement plan with that company. After the parties married, husband continued working for Litton for six years until 1984. When husband left Litton, he rolled over his $40,000 Litton retirement plan, a portion of which had accrued prior to the marriage, into his pension with Frazer Sales. Husband testified that he had "no idea" what the value of the Litton retirement plan was at the time of his marriage to wife. Husband estimated the current value of the Litton retirement plan to be $72,000. The trial court awarded the $72,000 retirement plan to husband as his separate property.

Wife argues that the trial court erred in awarding the entire Litton retirement plan to husband as his separate property when undisputed evidence clearly established that a portion of the plan was marital and a portion was separate.

> Code § 20-107.3(A)(2) provides as follows:
> All property including <u>that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature</u>, acquired by either spouse <u>during the marriage</u>, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is <u>presumed to be marital property in the absence of satisfactory evidence that it is separate property</u>.

(Emphasis added). "Separate property" includes "all property, real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1)(i). Pursuant to Code § 20-107.3(A)(3), a trial court must classify the parties' property as part marital

11

and part separate in certain circumstances. "In the case of any pension, profit-sharing, or deferred compensation plan or retirement benefit, the marital share as defined in subsection G shall be marital property." Code § 20-107.3(A)(3)(b).[1]

The evidence established that husband's employment with Litton began before the marriage and that husband continued working for Litton for six years after the parties married. Under Code § 20-107.3(A)(1), the portion of the Litton retirement plan attributable to husband's efforts before the parties married is presumed to be his separate property. The portion of the Litton retirement plan earned during the marriage is presumed marital unless husband produces satisfactory evidence that it is separate. Code § 20-107.3(A)(2), (G). Husband estimated that the 1984 value of the Litton retirement plan was $40,000 and that the current value of the plan is $72,000. However, husband failed to show which portion was earned before the marriage (separate) and which portion was earned during the marriage (marital). Thus, the trial court erred in awarding husband the entire $72,000 Litton retirement plan as his separate property. On remand the trial court must: (1) determine the value of the marital and separate shares of these retirement benefits; (2) determine the rights and equities of the parties in the marital

---

[1] Code § 20-107.3(G) defines "marital share" as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent."

12

share; and (3) if an award is to be made, to award a percentage of benefits which comports with the requirements of Code § 20-107.3 (G).

## HARMONY HILLS PROPERTY

The parties owned a jointly-titled property in Harmony Hills in Richmond, Virginia valued at $135,000. Neither party wanted the property, and the court ordered the property sold and the proceeds divided $109,500 (eighty-one percent) to wife and $25,500 (nineteen percent) to husband. In the final decree, the court ordered that any proceeds from the sale of the property exceeding $135,000 be divided in the same percentage.

Wife argues that the trial court erred in dividing the proceeds from the sale of the Harmony Hills property in a manner inconsistent with the joint ownership of the parties, i.e., failing to divide the sale proceeds fifty-fifty. Although the trial court awarded wife the greater portion of the sale proceeds, she contends that this award will subject her to greater capital gains tax liability than husband, and that the court erred in failing to consider the tax consequences of its unequal division of the sale proceeds.

> Code § 20-107.3(C) provides as follows:
> The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, or any part thereof.
>
> As a means of dividing or transferring the jointly owned marital property, the court may transfer or order the transfer of real or personal property or any interest therein to

13

one of the parties, permit either party to
purchase the interest of the other and direct
the allocation of the proceeds, provided the
party purchasing the interest of the other
agrees to assume any indebtedness secured by
the property, or order its sale by private
sale by the parties, through such agent as
the court shall direct, or by public sale as
the court shall direct without the necessity
for partition.

The trial court had authority to order the sale of the parties'
Harmony Hills property pursuant to Code § 20-107.3(C).
Additionally, because Code § 20-107.3(C) does not require that
the trial court equally divide the proceeds from the sale of
jointly owned property, the trial court did not err in dividing
the proceeds of the sale eighty-one percent to wife and nineteen
percent to husband.

In dividing jointly owned marital property, the trial court
must consider the specified factors in Code § 20-107.3(E),
including "[t]he tax consequences to each party."  Code
§ 20-107.3(E)(9).  Wife's argument that she will be subject to
greater tax liability because of the unequal division of the sale
proceeds is of no consequence.  The wife received a substantially
greater portion of the sale proceeds than did the husband and the
court necessarily considered that each would bear his and her
proportionate share of capital gains taxes.  Thus, the trial
court did not err in apportioning the sale proceeds eighty-one
percent to wife and nineteen percent to husband.

**EXTRAORDINARY MEDICAL EXPENSES**

At the hearing on February 2, 1995, wife asked the court to

14

order husband to pay his "share of the extraordinary health care costs of our son, including those for orthodontic treatment and prescriptions for ritilin (on[-]going expense)." In the final opinion letter dated March 3, 1995, the trial court ordered husband to maintain the orthodontic care of the parties' son and the parties to "divide equally the extraordinary medical expenses not covered by insurance." The record does not indicate the amount of extraordinary medical expenses incurred by the parties' son, specifically, the amount paid for his on-going ritilin prescription.

Wife asserts that the trial court erred in ordering the parties to divide equally the extraordinary medical expenses not covered by insurance because these expenses should have been divided according to the child support obligation of each party.

> Code § 20-108.2(D) provides as follows:
> Any extraordinary medical and dental expenses for treatment of the child or children shall be added to the basic child support obligation. For purposes of this section, extraordinary medical and dental expenses are uninsured expenses in excess of $100 for a single illness or condition and shall include but not be limited to eyeglasses, prescription medication, prostheses, and mental health services whether provided by a social worker, psychologist, psychiatrist, or counselor.

(Emphasis added). "A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning." Loudoun County Dep't of Social Servs. v.

15

Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993).

This Court has held that Code § 20-108.2(D) contemplates "payment for past expenses as well as continuing expenses." Carter v. Thornhill, 19 Va. App. 501, 507, 453 S.E.2d 295, 300 (1995). In Carter, the mother incurred substantial medical expenses for the treatment of the parties' daughter, who was in a serious car accident. The father filed a petition to modify child support, and the mother responded that the guideline amount was inadequate to cover the daughter's medical expenses. Id. at 503-04, 453 S.E.2d at 297-98. The trial court determined the parties' child support obligations under the guidelines, deviated from the guidelines because of the extraordinary medical expenses, and ordered the father to pay his percentage of the accrued medical expenses to the mother in a lump sum. Id. at 504-06, 453 S.E.2d at 298-99. This Court determined that "the trial court's order was not a retroactive modification but a prospective award." Id. at 505, 453 S.E.2d at 298.

Although not specifically on point, our decision in Carter upheld the division of extraordinary medical expenses according to "the percentages owed by each party toward [the] daughter's support." Id. at 506, 453 S.E.2d at 299. The plain meaning of Code § 20-108.2(D) contemplates a division of extraordinary medical expenses as part of "the basic child support obligation."

While the record in this case established that the parties' son suffered from a condition requiring an on-going prescription

16

for ritilin, no evidence indicated the exact nature of his condition or whether the prescription expenses were over $100. Thus, insufficient evidence supports the trial court's award of extraordinary medical expenses. Additionally, considering the plain meaning of Code § 20-108.2(D), we hold that the trial court erred in dividing equally the extraordinary medical expenses not covered by insurance rather than by a percentage equal to each party's child support obligation. On remand, the trial court should calculate each party's responsibility for any specific, extraordinary medical expenses established by the evidence, dividing these expenses in accordance with "the basic child support obligation" of each party.[2]

## SPOUSAL SUPPORT
### (1) Pendente Lite Spousal Support and Timing of Permanent Spousal Support

After a hearing on January 20, 1994, the trial court awarded

---

[2]Other states also provide for the inclusion of extraordinary medical expenses in the basic child support obligation. See, e.g., In re Marriage of Pollock, 881 P.2d 470, 472 (Colo. Ct. App. 1994) ("[E]xtraordinary medical expenses incurred on behalf of the children are to be added to the basic child support obligation and divided between the parents in proportion to their adjusted gross incomes."); Lloyd v. Lloyd, 649 So. 2d 32, 36 (La. Ct. App. 1994) ("By agreement of the parties or by order of the court, extraordinary expenses incurred on behalf of the child shall be added to the basic child support obligation.") (quoting La. Rev. Stat. § 9:315.5); Petrini v. Petrini, 648 A.2d 1016, 1019 n.8 (Md. 1994) (recognizing that extraordinary medical expenses may be added to the basic child support obligation and holding that the basic child support obligation is "divided proportionately between the parents in relation to their 'adjusted actual incomes'"); In re Marriage of Weed, 836 P.2d 591, 594 (Mont. 1992) (holding that extraordinary medical expenses "should be prorated between the parents and added to supplement the child support obligation").

17

wife _pendente_ _lite_ spousal support of $1,000 per month for three months, commencing February 1, 1994.  The trial court gave no reason for limiting wife's _pendente_ _lite_ support to three months. Husband continued to pay wife spousal support until October 1994.  On February 2, 1995, wife requested an award of spousal support retroactive to October 6, 1994.  The trial court issued its final letter opinion on March 3, 1995, awarding wife permanent spousal support commencing one month from the date of the final decree.  The final decree was not entered until July 7, 1995.  From October 1994 to August 1995, wife received no spousal support.

Wife argues that the trial court erred in refusing to extend her _pendente_ _lite_ spousal support beyond the original three-month period and in ordering permanent spousal support to commence one month after entry of the final decree.

We recognize that the decision "[w]hether to grant _pendente_ _lite_ support lies within the sound discretion of the trial judge."  _Weizenbaum v. Weizenbaum_, 12 Va. App. 899, 905, 407 S.E.2d 37, 40 (1991).  Although a trial court may in its discretion limit the duration of a _pendente_ _lite_ support award to the period of time reasonably necessary for the parties to conclude their litigation, nevertheless, in this case, the trial judge after finding a need for support gave no reason for limiting wife's _pendente_ _lite_ support to three months.  If husband had stopped paying _pendente_ _lite_ spousal support after

18

the three-month period ended in April 1994, wife would have been without any spousal support for over one year. Because wife showed a need for spousal support, and the record reflects no rationale for the time limitation imposed, we hold that the trial court abused its discretion in limiting her pendente lite spousal support to three months.

Additionally, "the trial court [has] discretion to enter the award of spousal support effective any time after the date of the commencement of the suit." Konefal v. Konefal, 18 Va. App. 612, 614, 446 S.E.2d 153, 154 (1994). Under the circumstances in this case, the trial court abused its discretion in ordering permanent spousal support to begin one month from entry of the final decree. The trial court found that wife had established a need for permanent spousal support at the March 1995 hearing. However, its timing of the award of permanent spousal support combined with the earlier discontinuance of pendente lite support left her without any support for approximately ten months.

**(2) Husband's Voluntary Contributions to a Retirement Account and Amount of Permanent Spousal Support**

Husband submitted evidence that showed his income to be $18,167 per month. His evidence included a W-2 form, showing a monthly salary of $17,895, and Exhibit 11, which indicated that he drew $10,000 per month in salary and averaged $8,167 per month in commissions. Wife's expert determined husband's average monthly income to be $22,330 by using a six-year weighted average, and his monthly income for 1993 to be $27,084.

19

Husband admitted that he voluntarily contributed $30,000 from his gross income to his retirement plan in 1993. Husband's accountant confirmed that husband added $30,000 to his retirement account in 1993 and that, if husband had not put the money into his retirement plan, he could have taken "it as additional compensation in the form of a bonus, or additional salary." The trial court excluded the voluntary retirement contributions from the calculation of husband's gross income and determined husband's monthly income to be $18,167. Wife's monthly income was established as $2,260. Wife's evidence indicated that her monthly expenses were over $11,000, and included monitoring of her ongoing health problems. Husband's evidence established that his monthly expenses were $8,651, and included over $1,000 per month to maintain his boat. In the March 3, 1995 letter opinion, the court set permanent spousal support at $416 per month.

Wife argues that the trial court erred in failing to include husband's voluntary contributions to his retirement plan in his gross income for the purposes of determining spousal support.

Code § 20-107.1 provides that, in determining spousal support, the trial court shall consider "[t]he earning capacity, obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature." Code § 20-107.1(1) (emphasis added). No Virginia case has addressed the issue of whether voluntary contributions to a retirement plan

20

should be included in a spouse's income when determining spousal support. However, other jurisdictions who have addressed this issue include a spouse's voluntary contributions to a retirement account, pension plan, or savings account in gross income in a child support context. See, e.g., Nelson v. Nelson, 651 So. 2d 1252, 1253-54 (Fla. Dist. Ct. App. 1995) (no deduction from gross income allowed for party's voluntary contributions to retirement account); State ex rel. Nielsen v. Nielsen, 521 N.W.2d 735, 737 (Iowa 1994) ("Our guidelines specifically do not allow a deduction for voluntary savings or payment of indebtedness."); Lebrato v. Lebrato, 529 N.W.2d 90, 98-99 (Neb. Ct. App. 1995) ("The Guidelines do not allow a deduction for contributions to voluntary retirement plans in arriving at net income . . . ."); Shaver v. Kopp, 545 N.W.2d 170, 175 (N.D. 1996) (gross income is income from any source and includes an employee's voluntary contributions to tax-deferred savings and his employer's matching contributions); Heisey v. Heisey, 633 A.2d 211, 212 (Pa. Super. Ct. 1993) (only non-voluntary retirement payments may be subtracted from gross income).

We find no reason to calculate gross income for the determination of spousal support in a manner different from the calculation of gross income in the child support context when addressing a voluntary contribution to a savings or deferred compensation plan. For purposes of determining child support Code § 20-108.2(C) defines gross income as follows:

For purposes of this section, "gross income"

21

shall mean <u>all income from all sources, and</u> <u>shall include, but not be limited to, income</u> <u>from salaries, wages, commissions, royalties,</u> <u>bonuses, dividends, severance pay, pensions,</u> <u>interest, trust income, annuities, capital</u> <u>gains, social security benefits except as</u> <u>listed below, workers' compensation benefits,</u> <u>unemployment insurance benefits, disability</u> <u>insurance benefits, veterans' benefits,</u> <u>spousal support, rental income, gifts, prizes</u> <u>or awards</u>. Gross income shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business. "Gross income" shall not include benefits from public assistance programs as defined in § 63.1-87, federal supplemental security income benefits, or child support received.

(Emphasis added). Under Code § 20-108.2(C), gross income includes "all income from all sources," and unless specifically excluded, any income from any source is subject to inclusion. Clearly, Code § 20-108.2(C) does not specifically exclude voluntary contributions to retirement plans from the definition of gross income in a child support calculation.

While the statutory language does not specify the same scheme in a spousal support calculation, the same rationale is applicable. Thus, we hold that a spouse's voluntary contributions to a retirement account should be included in his or her gross income for both spousal and child support purposes. A spouse and/or parent should not be allowed to voluntarily divert funds for retirement in order to exclude that income from consideration in determining spousal or child support. Code § 20-107.1(1) requires the trial court in setting spousal support to consider the "earning capacity" of the parties. Although

22

"earning capacity" necessarily includes actual earnings, it is a broader concept that allows the trial court to consider more than actual earnings. Nevertheless, a party's voluntary contributions to a retirement account are actual earnings that are merely set aside for the future, and such contributions or deferred income must be considered in determining a spouse's income and ability to pay spousal support.

The evidence established that husband voluntarily placed $30,000 per year in his retirement account with Frazer Sales. Husband unilaterally chose to contribute $30,000 of actual income into a retirement scheme of his own choosing and for his sole benefit. Wife's spousal support award was less than fifteen percent of the husband's voluntary contribution to his retirement. Although a support award is based upon a balancing of the parties' incomes and earning capacities and their respective needs, under these circumstances, the trial court erred in failing to include husband's voluntary contributions to his retirement account in his gross income for purposes of determining spousal and child support.

Wife also contends that the trial court awarded an inadequate amount of spousal support. Because we hold that the trial court should have included husband's voluntary contributions to his retirement plan in his income, on remand, the trial court shall reconsider its award of spousal support to wife in accordance with the factors of Code § 20-107.1.

23

## CHILD SUPPORT

### (1) Modification after Appeal to Court of Appeals

The final decree in this case was entered on July 7, 1995, and wife filed her notice of appeal in this Court on August 1, 1995. The legislature enacted new statutory guidelines for child support effective July 1, 1995. In an August 3, 1995 order, the trial court found that the legislative change in the guidelines was a material change in circumstances and reduced husband's child support obligation.

Wife contends that the trial court erred in modifying the child support award after the final decree had been appealed to this Court.

"The orderly administration of justice demands that when an appellate court acquires jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken must cease." Decker v. Decker, 17 Va. App. 562, 564, 440 S.E.2d 411, 412 (1994) (quoting Greene v. Greene, 223 Va. 210, 212, 288 S.E.2d 447, 448 (1982)). This Court acquires jurisdiction over a case when the appeal is filed and docketed in the clerk's office of the Court. Id. "Thus, while the trial court may enforce a support and custody order, it may not modify such order without leave of court." Id.

In this case, wife filed her first notice of appeal in the clerk's office of this Court on August 1, 1995, challenging the

trial court's final decree of July 7, 1995.  At that point, this Court acquired jurisdiction over the case.  On August 3, 1995, two days after this Court acquired jurisdiction over the case, the trial court modified husband's child support obligation based upon the legislature's changes in the child support guidelines.  Thus, the trial court had no jurisdiction to modify the child support award without leave from this Court.

## (2) Wife's Spousal Support as Income

Finally, wife asserts that the trial court erred in including her spousal support in her income when it calculated husband's child support obligation.

Code § 20-108.2(C) provides, in pertinent part, that "spousal support included in gross income [for child support purposes] shall be limited to spousal support paid pursuant to a pre-existing order or written agreement and spousal support shall be deducted from the gross income of the payor when paid pursuant to a pre-existing order or written agreement between the parties to the present proceeding."  This Court has defined a "pre-existing order" as "an order that has continuing effect and that provides a spouse with an income source."  Sargent v. Sargent, 20 Va. App. 694, 706, 460 S.E.2d 596, 601 (1995).  However, a spousal support order must also "pre-exist" the child support calculation.  Additionally, although a spousal support order must pre-exist the determination of child support, the plain meaning of Code § 20-108.2(C) contemplates spousal support

25

"between the parties to the present proceeding."

In the instant case, the trial court did not err in including wife's spousal support in her income for child support purposes. The trial court should follow a three-step process in resolving issues of equitable distribution, spousal support, and child support. Because in determining child support under Code § 20-108.2(C), the trial court must include spousal support in the gross income of the receiving spouse and must deduct the amount of spousal support from the gross income of the paying spouse, the court should first determine equitable distribution, then spousal support, and finally child support. Although the trial court properly included wife's spousal support in her income and deducted spousal support from husband's income, the court failed to include husband's voluntary contributions to his retirement account in husband's gross income for purposes of spousal or child support and must for both reasons recalculate the amount of child support on remand.

## INSURANCE POLICIES

We find no error in the trial court's equitable distribution decision concerning the life insurance policies. The record clearly supports the trial court's resolution of these issues. In the absence of a showing of an abuse of discretion, we uphold these decisions. Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Accordingly, the trial court's rulings on the value of

husband's business, the division of the Harmony Hills property and the insurance policies are affirmed.  On remand, the trial court must reconsider equitable distribution, spousal support, and child support in accordance with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.