## CIRCUIT COURT OF FAIRFAX COUNTY

Sharon Leigh (Kibling) Schafer

v.

Todd Richard Kibling

### Case No. C119464

### November 26, 1996

BY JUDGE THOMAS S. KENNY

This matter came on for a custody hearing on October 7, 9, and 10, at the conclusion of which I recessed the case for review of depositions and submission of written closing arguments. After careful review of the arguments and consideration of all the evidence in the case, the court awards sole legal custody of the child to the mother, with appropriate visitation to the father.

Counsel have also requested a ruling on the admissibility of Father's Exhibit 40. The exhibit will be taken into evidence. Furthermore, the order denying the father's request to submit rebuttal evidence has been entered. The court has heard three full days of *ore tenus* testimony, has reviewed hundreds of pages of depositions, received scores of exhibits, and considered over fifty pages of closing arguments (including footnotes). Enough is enough.

The parties' son, Corey, is an eight-year-old boy, who has lived with his mother his whole life. He has asthma and allergy problems, as well as possible attention deficit disorder and a history of some behavioral problems at school. The testimony of his treating physicians was that his medical condition is improving as he gets older as a result of normal maturation, good medical management, and good care by his mother, who has educated herself extensively in the management of the child's physical conditions.

The father has absented himself on several occasions from the boy's life for extended periods. Part of this time, he was in Japan, and part of the time, he was in the Midwest while Corey lived here in Virginia with his mother. However, he returned to Virginia in 1993, living just a few miles from the mother and son but made no attempt to contact them for several months. Subsequently, after a visitation schedule was negotiated by the parties and their counsel in the summer of 1994, he left again on an extended business trip and did not attempt visitation again for many months.

The father claims that his attempts at visitation have been hampered by the mother, and in fact, he says that she has alienated Corey from him. The evidence does not support this. While Ms. Schafer is clearly not on good terms with her former husband, there is nothing in the evidence to support the conclusion that she has tried to prevent him from having a relationship with Corey. In establishing that relationship, however, she has attempted to ensure that Corey's medical condition will be monitored and cared for adequately. It is this behavior on her part that Mr. Kibling interprets as alienation. While the court agrees with him that Ms. Schafer is extraordinarily protective of Corey and has attempted to exercise considerable control over the conduct of visitation,[1] the facts are that (1) asthma is a serious medical condition, and (2) it has improved "in no small part," to quote Dr. Napolitano, as a result of her high level of care. Her concern about that improvement being undone (or of some more calamitous event occurring) is legitimate and understandable.

The court finds that Ms. Schafer has set conditions to the father resuming full visitation with his son that were intended to ensure that Mr. Kibling was conversant with Corey's condition and with the appropriate response to a deterioration in that condition. This does not and cannot amount to alienation.

The court further finds that the father has made the necessary efforts to familiarize himself with Corey's medical problems and to equip himself and his home as a suitable place for Corey to visit. Accordingly, there should be no bar to the establishment of a normal visitation regime, which will include alternate weekends from Saturday morning until Sunday evening, as well as Friday afternoon (after school) and evening on those Fridays which do not precede his regular weekend visitation. The father will also have two weeks of visitation in the summer. The parties should work out a schedule for holidays, birthdays, Mother's Day/Father's Day, and the like.

---

[1] A conspicuous example occurred when Corey asked if he could bring his father to school for "show and tell" so he could prove to the other children in his class that he really did have a father, but Ms. Schafer refused to allow it because it would be "unsupervised visitation."

A troubling aspect of this case is that Corey seems to have been given significant power over the terms and times of his visitation. Especially since the father's custody petition was filed in this case, Corey has been reluctant to go on visitation. His therapist has suggested that if he decides in the course of a weekend visitation that he wants to return home to his mother, he should be allowed to do so then and there. That is a suggestion that the court declines to adopt. An eight-year-old is simply too young to be dictating things like that to his parents. It is to be hoped that with the uncertainty of the custody dispute behind him, Corey's reluctance to leave his mother and visit his father will abate.

This is a custody case that never should have been brought. The amount of money that has been spent on attorneys, experts, and deposition costs is enough to have sent Corey to a top-rated private college. The combined attorneys' fees and costs in this case exceed $88,000.00! It is a petition by a father who has never been actively involved in his child's life for any extended period of time, seeking to take custody from a mother who has been highly protective but generally successful in being a single parent to her child. Having found no evidence of alienation or any reasonable basis for an objective observer to believe that alienation had occurred, I am at a loss to understand why this is here. We leave this crucible of litigation in no different position from what had been substantially agreed to by the parties in 1994, except for a huge drain on the resources of parties who can ill afford it. This is a direct result of the father's actions in this litigation. The court therefore orders the father to pay $35,000.00 of the mother's attorney's fees in this matter. If the parties are unable to agree on a schedule for such payment, the court will impose one.

Also before the court for consideration at the time of this custody hearing was supposed to be an issue of establishing the proper level of child support. No evidence was presented on that issue, and accordingly, no ruling is made as to it.

July 2, 1997

BY JUDGE LESLIE M. ALDEN

This matter came before the Court on April 9, 1997, upon Defendant Todd R. Kibling's ("Kibling") Motion to Recalculate Child Support. At the hearing, the Court ruled that each party's pre-tax benefits will be included as income in determining monthly child support payments. The Court took under advisement how "extraordinary medical expenses" should be defined and

apportioned by the parties (i.e. according to the terms of the property settlement agreement ("PSA") or statute and case law), and which expenses incurred in treating Corey Kibling qualified as "extraordinary medical expenses." The Court additionally took under advisement the issue of Mr. Kibling's requested deviations from the child support guidelines.

## I. *"Extraordinary Medical Expenses" Defined*

Virginia Code Ann. § 20-108.2 sets out presumptive guidelines in determining child support. Once the presumptive amount of child support (including extraordinary medical expenses) is determined under the guidelines, it is permissible for a court to deviate from them if there is a finding that applying the guidelines would be "unjust or inappropriate" under the circumstances; such a finding would be based in a large part on "the best interests of the child." § 20-108.1(B). Section 20-108.2(D) states:

> Any extraordinary medical and dental expenses for treatment of the child or children shall be added to the basic child support obligation ...
> [E]xtraordinary medical and dental expenses are uninsured expenses in excess of $100 for a single illness or condition ... .

Both parties contend that the term "extraordinary medical expenses" as used in § 20-108.2(D) is ambiguous; they disagree, however, on how the term should be defined. Plaintiff Sharon Schafer argues that the term means the annual cumulative total of all uninsured medical expenses for each illness or condition, minus $100.00. Kibling contends that the PSA's definition of the term is a permissible interpretation of the Code and should therefore be adopted by the Court; section 15 of the PSA defines extraordinary medical expenses as "singular expenses of $100.00 or more."

After considering different interpretations of the term, the Court finds that neither party's interpretation is consistent with the language and intent of the Code. The child support guidelines set forth in § 20-108.2 are based on monthly calculations. Thus, the Court concludes that the reference to "extraordinary medical expenses" in § 20-108.2(D) should be interpreted on a monthly, rather than annual, interval. As the Code recognizes that a child may be subject to both a single illness of short duration as well as a more prolonged condition, it is reasonable to conclude that the term includes the total of all monthly uninsured medical expenses for an illness or condition that exceed $100.00. Because Corey's asthma, allergy, and reflux conditions overlap, they shall be considered one condition.

## II. *Apportionment of Extraordinary Medical Expenses*

Section 20-108.2(D) does not address how extraordinary medical expenses should be apportioned. Schafer argues that the Code, as interpreted by the Court of Appeals of Virginia, requires apportionment of extraordinary medical expenses by a percentage equal to each party's child support obligation. On the other hand, Kibling argues that, as the PSA is not inconsistent with § 20-108.2(D), the terms of the PSA should remain enforceable; section 15 of the PSA provides that "[t]he parties agree to pay for all extraordinary expenses, each sharing equally on a 50/50 basis."

In *Frazer v. Frazer*, 23 Va. App. 358, 374 (1996), the Court of Appeals held that "the trial court erred in dividing equally the extraordinary medical expenses not covered by insurance rather than by a percentage equal to each party's child support obligation." The court remanded the matter back to the trial court, ordering the lower court to divide the expenses "in accordance with 'the basic child support obligation' of each party." *Id.*

The law, as interpreted by the Court of Appeals, requires parties to apportion extraordinary medical expenses in the same manner that basic child support is apportioned. According to §§ 20-108.1(B) and 20-108.2(A), the Court may deviate from this apportionment scheme only if an unjust or inappropriate result would ensue. The Court is not convinced that following the guidelines would yield an unjust or inappropriate result; neither does the Court believe that deviating from the Code in order to adhere to the terms of the PSA is in Corey's best interests. Accordingly, extraordinary medical expenses are to be apportioned in the same manner as basic child support.

## III. *Expenses That Are Medically Necessary Expenses*

In reaching a determination of which expenses are medically necessary (and thus must be apportioned between the parties), the Court has reviewed the parties' arguments, papers in support, and the depositions of Dr. Napolitano, Corey's family practitioner, and Dr. Baraniuk, Corey's allergist. Although both doctors indicated that Schafer exhibits a great deal of anxiety about Corey's health, *see* Napolitano Depo. at 15; Baraniuk Depo. at 34-35, neither doctor felt that her behavior is "hypochondriacal" or inappropriate. *See* Napolitano Depo. at 15; Baraniuk Depo. at 34-35. Dr. Napolitano noted that it would not be his choice to treat Corey as aggressively as Dr. Baraniuk, but he also explained that such a course of treatment is merely a different approach. Napolitano Depo. at 46. Dr. Napolitano also observed that possibly half of

Corey's visits do not result in medical treatment; however, his relationship with Schafer and Corey is such that he counsels them, and they are comfortable with that.[2] Napolitano Depo. at 75.

Based on the doctors' deposition testimony, the Court finds that Corey suffers chronically from allergies, asthma, and reflux. He also suffers from conjunctivitis, hay fever, otitis media and sinusitis, allergic contact urticaria, and chronic atopic dermatitis. These conditions are related to and overlap with Corey's chronic allergies. The Court further finds that the doctors' visits at issue were medically necessary, with the exception of the visits where Corey was bruised due to "manhandling" at school and where Corey suffered from scrapes and contusions after falling off of his bicycle. *See* Napolitano Depo. at 71-75.

Additionally, the Court finds that Corey's visits to the therapist are not frivolous, and Kibling must pay his proportionate share of these expenses. However, henceforth, Corey must obtain all of his medical care from providers who are covered by one of his parents' insurance policies.

### IV. *Kibling's Request for Deviations*

Section 20-108.1 permits deviations from the child support guidelines based on eighteen enumerated factors, including "tax consequences to the parties regarding claims for dependent children and child care expenses" (§ 20-108.1(B)(15)) and "actual monetary support for other children, other family members, or former family members." § 20-108.1(B)(1). Kibling requests deviations from the guideline support amount based on these two factors. Specifically, he seeks a $58.00 per month[3] reduction in child support for each of the months in question. In addition, Kibling seeks a $200.00 per month deviation for 1997 as a result of costs associated with the care of his daughter born in June of 1996 of a subsequent marriage.

### A. *Tax Consequences (§ 20-108.1(B)(15))*

The custodial parent is entitled to the dependency exemption under federal tax law, unless the custodial parent executed a waiver for a particular year. 26

---

[2] While the Court is not ruling that Kibling need not pay for his share of these medical visits, the Court notes that as Corey gets older, the need for Schafer to seek such "counseling" from Corey's physicians should decrease significantly in frequency.

[3] The figure represents the value to Schafer of the dependency exemption for Corey. Kibling does not seek a deviation for the value to Schafer of the child care credit.

U.S.C. § 152(e). Virginia courts do not have the authority to compel a custodial parent to exercise such a waiver; rather, the tax consequences to Kibling are merely factors which the courts may consider in determining whether a deviation from the support guidelines is appropriate. *Dietz v. Dietz*, 17 Va. App. 203, 207-08 (1993); *Floyd v. Floyd*, 17 Va. App. 222, 231-232 (1993). If a deviation were granted based on tax consequences to Kibling, the difference in his support obligations before and after the deviation would be negligible. Thus, this factor alone does not warrant a deviation from the presumptive amount.

Furthermore, paragraph 17 of the PSA specifically gives to Schafer the tax exemptions for Corey. The parties bargained for this arrangement in the agreement, it is not inconsistent with the Code, and it is not unjust or inappropriate. Thus, Kibling's request for a deviation of his child support obligation based on tax consequences is denied.

## B. *Monetary Support for Other Children (§ 20-108.1(B)(1))*

The Court has considered Kibling's request for a deviation from the guidelines due to his actual expenses for his daughter born of his second marriage. After considering all of the evidence in this case and the statutory factors contained in § 20-108.1, the Court concludes that the presumptive amount of support for Corey is not unjust or inappropriate. Accordingly, Kibling's request for a deviation based on his support of his second child is denied.

## V. *Conclusion*

The parties shall calculate their monthly child support obligations based on the Court's findings and rulings included herein and in accord with the guidelines.