COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bumgardner
Argued by teleconference


ALAN MICHAEL LEGAS

                                    MEMORANDUM OPINION* BY
v.    Record No. 2683-00-2          JUDGE JERE M. H. WILLIS, JR.
                                         JULY 17, 2001
CAROL EULENE LANGFORD LEGAS,
 A/K/A CAROL FRANTZ


            FROM THE CIRCUIT COURT OF ORANGE COUNTY
                   Daniel R. Bouton, Judge

          Robert B. Hill (Shelley K. Richardson; Hill,
          Rainey & Eliades, on brief), for appellant.

          Susan W. Allport (Rae H. Ely & Associates, on
          brief), for appellee.


     Alan Michael Legas (the father) contends that the trial

court erred (1) in awarding child support arrearages in the

amount of $22,217.43 with interest to Carol Eulene Langford

Legas (the mother) and (2) in holding him in contempt and

awarding attorney's fees to the mother as a result of that

finding.  The mother seeks attorney's fees for this appeal.  We

affirm the judgment of the trial court and decline to award

attorney's fees.


---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  BACKGROUND

The father and the mother were married on August 9, 1975 and subsequently separated.  Their January 26, 1990 separation and property settlement agreement (the Agreement) was ratified, confirmed, and incorporated into their March 6, 1990 divorce decree.  Paragraph 19 of the Agreement provides as follows:

> Each year on the first day of February, there will be an annual adjustment in these [child support] payments by the percentage change in [the father's] net income, as defined in an exhibit attached and made part hereof.

The attached exhibit states:

> Net income as utilized in Paragraph 19 of the agreement shall be defined to mean the gross income of [the father] from all sources less federal taxes, state taxes, FICA, union dues, payments mandated by union requirements, premiums paid by [the father] as required under the agreement for medical insurance, life insurance, dental insurance and loss of license insurance. . . .

In 1991, the mother moved the trial court to determine the amount of child support owed her under the Agreement and to require the father to provide certain financial information.  On September 12, 1991, the trial court, by agreement of the parties, amended the exhibit to the Agreement defining net income.  It "deleted and redefined" the term net income as follows:

> Net income as utilized in Paragraph 19 of the Agreement shall be defined to mean the gross income of [the father] from all sources less federal taxes, state taxes,

-

FICA, union dues, payments mandated by union requirements, premiums paid by [the father] as required under the agreement for medical insurance, life insurance, dental insurance and loss of license insurance. The amount that [the father] withholds for Federal and State purposes shall be reviewed each year. If the percentage of income withheld for federal tax purposes exceeds 22.57%, the amount of income in excess of the amount realized by multiplying 22.57% times the gross income shall be added back to the net income. If the percentage of income withheld for state tax purposes exceeds 5.1%, the amount of income in excess of the amount realized by multiplying 5.1% times the gross income shall be added back to the net income. By utilizing the percentage of withholding instead of analyzing the tax refund, the parties no longer need to determine what percentage of any refund is apportioned to [the father] and what percentage is apportioned to [the mother]. Each party reserves the right to have support recalculated by the Court in the event of a substantial change in circumstances involving a change of the tax rate.

The September 12, 1991 order further provides in Paragraph 3 as follows:

On or before February 1 of each year, [the father] shall provide to [the mother] a copy of his year end pay stub and any W-2 forms and 1099 forms or, in the absence of such forms, other similar forms showing income from any and all sources. [The father] agrees also to provide a copy of the union contract and any other similar documents to [the mother] for the purpose of showing what payments are deleted from [the father's] gross income as a result of union requirements. When [the father] has calculated the amount that he believes that he owes for child support, he shall so notify [the mother] and provide an

-

explanation as to the various deductions from the gross income.

In 1993, the mother moved for an order determining the proper child support for the years 1992 and 1993, requesting payment of arrears, and requesting that the father reimburse her for medical and dental expenses that he had deducted from his child support payments.

By order entered September 13, 1993, the trial court held:

Whereupon the Court did ADJUDGE, ORDER and DECREE that the gross income of the [the father] from his employment as an airline pilot shall be that amount shown on his W-2 form in Block 10 (wages, tips, other); that the [the father] is not entitled to subtract the medical insurance deductible in determining the appropriate child support calculation; that the [the father] is not entitled to subtract disability insurance premiums in the calculation of his child support calculation; that, in the absence of the portion of health insurance premium allocable to cover the children of the parties, the [the father] is not entitled to subtract the health insurance from the child support calculation; that the [the father] is required to add back certain federal and state taxes as set forth in the formula in Order #2 of September 12, 1991; that the amount owed for child support for each child beginning February 1992 was $1,093.45 and that the amount owed for child support for each child beginning February 1993 was $1,062.83.

Subsequent to this 1993 order, the father provided the mother, for each tax year commencing in January 1994, his year end pay stub with handwritten calculations for child support.

-

On March 1, 2000, the mother moved the trial court to compel the father's compliance with the prior orders of the court regarding payment of orthodontic and optical bills, joint debts and child support. The mother argued that the father owed her child support arrears from January 1995 through the date of the hearing on June 5, 2000, because he had failed to include in his income his voluntary contributions into a 401(k) plan and because he deducted union dues and "loss of license" insurance premiums in violation of the court orders. The mother further sought an order holding the father in contempt for his violations of the earlier court orders and an order awarding her attorney's fees, court costs and travel costs.

The father sought an order setting the child support amount per the guidelines set forth in Code §§ 20-108 and 20-112.

By letter opinion dated August 11, 2000, the trial court held that the father's voluntary contributions to a 401(k) plan should have been included in his gross income for the calculation of his child support obligation and awarded arrears to the mother. The court refused to allow the father to deduct from his gross income his union dues and "loss of license" insurance premiums because he had failed to provide proper documentation thereof. The court awarded the mother one-half of the orthodontic and optical expenses. It held the father in civil contempt for failing to pay child support and for failing to provide the documentation required by the court, but provided

-

that he could purge the contempt by payment in full within six months of the entry of the order. The court further determined that, commencing on June 1, 2000, child support would be calculated pursuant to the statutory guidelines rather than by the formula previously established by the parties. Finally, the court awarded attorney's fees to the mother and denied the father's application for attorney's fees. An order setting forth these rulings was entered on October 17, 2000.

## II.  CHILD SUPPORT ARREARAGES

The father contends that the trial court erred in holding that its 1993 order was ambiguous and in finding that he was in child support arrears in the amount of $22,217.43 plus interest. He argues that the trial court erred in holding that he should have included his 401(k) contributions as part of his gross income for purposes of applying the parties' child support formula. He also argues that the trial court erred in refusing to allow him to deduct from his gross income his union dues and "loss of license" insurance premiums. We disagree with both contentions.

### A.  THE FATHER'S VOLUNTARY CONTRIBUTIONS OF INCOME TO A 401(k) ACCOUNT

At issue is the trial court's holding that the 1993 order was ambiguous regarding how the term "gross income" should be interpreted and applied to the claimed arrearages. "[A] court may speak only through its written orders." Clephas v. Clephas,

-

1 Va. App. 209, 211, 336 S.E.2d 897, 899 (1985). When a court reviews ambiguous provisions in an order or decree, the rules of construction require that primary consideration "be given to an interpretation which would support the facts and law of the case in order to avoid a result that will do violence to either." Parrillo v. Parrillo, 1 Va. App. 226, 230, 336 S.E.2d 23, 25 (1985) (citing 46 Am. Jur. 2d Judgments §§ 72-76 (1969); 11A Michie's Jurisprudence Judgments and Decrees § 5 (1978)). Moreover, such an interpretation is a question of law, to be construed like other written instruments, and read in connection with the entire record. See 46 Am. Jur. 2d Judgments §§ 93-97 (1994).

The 1993 order arose from a dispute over the father's child support calculations for the years 1991, 1992, and 1993. The mother claimed a discrepancy between the amount of income shown on the father's year end pay stubs and the amount shown on his W-2 forms. The father testified that the figure set forth in Block 10 on his W-2 form represented his full income. Because the W-2 forms contained the most accurate information regarding the father's salary during the period under consideration, the trial court ordered that the gross income of the father "shall be that amount shown on his W-2 form in Block 10 (wages, tips, other); . . . ."

The father contends on appeal that the 1993 order is not ambiguous and that its "clear language" should control. He

-

argues that the language "shall be" expressed an ongoing standard of determination. He argues that because Block 10 on his W-2 form never included his 401(k) contributions, which were then listed in Block 17, Line D, he was not required in subsequent years to include his 401(k) contributions in his income for child support calculations. We are not persuaded by this argument.

The trial court never eliminated or redefined either the term "net income" or the term "gross income" from the Agreement or the 1991 order for the purposes of the child support calculation. Rather, in making reference to the father's W-2 forms, the trial court in 1993 was merely describing the manner in which it had determined the father's earnings in connection with the years 1991, 1992, and 1993, which the rulings set forth in that order addressed. The language "shall be" expressed not a rule of future determination, but an imperative. The court was faced with a situation whereby the father had constantly failed to supply the mother with accurate information regarding his total, earned income as a pilot. In trying to determine the father's income for the years 1991, 1992, and 1993, the court used the best information available to it, the father's W-2 forms. Nowhere does the 1993 order state that the parties were to use Block 10 of the father's W-2 form as the starting point for his child support calculations in any subsequent years.

-

Therefore, we agree with the trial court below in holding that the 1993 order was ambiguous as to this issue.

Recognizing the ambiguity in the 1993 order, we find the trial court's inclusion of the father's exempted 401(k) contribution in calculating his gross income to be consistent with the history of the case, the previous orders, and the original agreement of the parties.[1]

Over the past ten years, the parties have waged an ongoing battle over the application of the child support formula agreed to by both parties and incorporated into the final divorce decree. This struggle has been hampered by the father's repeated failure to provide the mother and the trial court accurate information regarding his total earned income as a pilot. Every document and every court order has contemplated full disclosure of this.

The parties' original agreement and the 1991 court order reflect that the parties intended the starting point for the father's child support calculation to "be defined to mean the gross income of [the father] from all sources." (Emphasis

---

[1] Although <u>Frazer v. Frazer</u>, 23 Va. App. 358, 477 S.E.2d 290 (1996), addressed only the question whether 401(k) contributions should be considered income under the statutory definition that applies to support calculations under the guidelines, the rationale of the decision is instructive. In <u>Frazer</u>, we held that 401(k) contributions represent actual earnings that are voluntarily diverted and set aside for the future benefit of the employee and, thus, should be included in the employee's gross income for calculation of spousal and child support. <u>See</u> <u>id.</u> at 376-79, 477 S.E.2d at 299-300.

-

added).  Clearly, for the purposes of child support calculations, the father was to include "all" of his income from his employment, including any voluntary contributions to a retirement account.  The father should not be allowed to voluntarily divert funds to exclude that income from consideration in determining his child support obligation.

## B.   THE FATHER'S DEDUCTION OF UNION DUES

The trial court did not err in refusing the father's deduction of his union dues from gross income.

The 1991 order provided that "[the father] agrees also to provide a copy of the union contract and any other similar documents to [the mother] for the purpose of showing what payments are deleted from [the father's] gross income as a result of union requirements."  We agree with the trial court that "the evidence required to establish any deductions to which [the father] would arguably be entitled is not sufficient."  The father offered only his handwritten calculations and no evidence corroborating his testimony about the figures that he provided. He conceded that his calculations were incorrect in that the amount of income shown did not always match his W-2 forms. Therefore, the trial court did not err in rejecting his deduction of his union dues from gross income.

-

C.  THE FATHER'S DEDUCTION FOR
"LOSS OF LICENSE" INSURANCE PREMIUMS

The trial court did not err in refusing the father's deduction of his "loss of license" insurance premiums from gross income.

The 1991 order permitted the deduction of "loss of license" insurance.  The 1993 order provided that the father "is not entitled to subtract disability insurance premiums in the calculation of his child support calculation."  The father testified that the "loss of license" insurance premiums included disability insurance.  He made no attempt to deduct only the portion of his "loss of license" premium that is not attributable to disability insurance.  He offered no evidence to substantiate his handwritten calculations, and never provided the "explanations as to the various deductions" required by the 1991 order.  The trial court did not err in rejecting the father's deduction of his "loss of license" insurance premiums in calculating his child support obligation.

III.  CONTEMPT

The trial court did not err in holding the father in civil contempt for failing to pay child support as ordered and for failing to provide sufficient documentation required by the court.  "A trial court 'has the authority to hold [an] offending party in contempt for acting in bad faith or for willful

-

disobedience of its order.'" Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (citation omitted).

Because the mother presented evidence from which the trial court could determine that the father had not paid the child support and not provided the documentation required by the Agreement and subsequent court orders, we cannot say the trial court erred in finding the father guilty of civil contempt. Furthermore, it did not abuse its discretion by requiring the father to pay the arrearage immediately in order to purge the contempt. This order was remedial in nature. See Rainey v. City of Norfolk, 14 Va. App. 968, 974, 421 S.E.2d 210, 214 (1992).

## IV.   ATTORNEY'S FEES

We also conclude that the trial court did not err in granting the mother's request for attorney's fees. "An award of attorney fees is discretionary with the court after considering the circumstances and equities of the entire case and is reviewable only for an abuse of discretion." Gamer v. Gamer, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993). "The key to a proper award of counsel fees is reasonableness under all of the circumstances revealed by the record." Ellington v. Ellington, 8 Va. App. 48, 58, 378 S.E.2d 626, 631 (1989).

On three different occasions, the mother was forced to seek assistance from the trial court to compel the father to comply with its previous orders and to provide sufficient documentation

-

of his income.  Based on this evidence, we cannot say that the trial court abused its discretion in awarding the mother attorney's fees.  However, after considering the circumstances of this case, we deny the mother's request for attorney's fees and costs related to this appeal.

For these reasons, we affirm.

<u>Affirmed.</u>