Gail R. Opitz

    v.

Virginia Employment Commission
and Spherion Atlantic Workforce

February 1, 2007

Case No. CL-2006-13323

BY JUDGE ARTHUR B. VIEREGG

This matter came before the Court on January 19, 2007, on Gail R. Opitz's Petition for Judicial Review of the Virginia Employment Commission's determination that she is not eligible for unemployment benefits. I took the matter under advisement. After reviewing the record, the parties' briefs, and the oral arguments presented, my decision follows.

### Background Information

Ms. Opitz was employed by Spherion Atlantic Workforce ("Spherion"), a temporary work placement agency, from September 3, 2005, to November 23, 2005. While employed by Spherion, Ms. Opitz worked for a Red Cross hurricane relief call center. After an altercation with her Red Cross supervisor on November 23, 2005, Ms. Opitz was terminated.

Shortly thereafter, Ms. Opitz attempted to obtain unemployment benefits from Commission. This request was denied on February 22, 2006. In an opinion by a deputy of the Commission ("Deputy Determination"), it was held that Ms. Opitz had been "released from [her] last assignment for insubordination" and that she "left work voluntarily without good cause." *See* Deputy Determination at 1. Thus, Ms. Opitz was disqualified for unemployment benefits in accordance with Va. Code § 60.2-618(1):

> *An individual shall be disqualified for benefits* upon separation from the last employing unit for whom he has worked 30 days or 240 hours or from any subsequent employing unit:
>
> 1. For any week benefits are claimed until he has performed services for an employer (i) during 30 days, whether or not such days are consecutive, or (ii) for 240 hours, and subsequently becomes totally or partially separated from such employment, *if the Commission finds such individual is unemployed because he left work voluntarily without good cause.* As used in this chapter, "good cause" shall not include (i) voluntarily leaving work with an employer to become self-employed or (ii) voluntarily leaving work with an employer to accompany or to join his or her spouse in a new locality. An individual shall not be deemed to have voluntarily left work solely because the separation was in accordance with a seniority-based policy.

Va. Code § 60.2-618(1) (emphasis added).

On February 23, 2006, Ms. Opitz filed a timely appeal to the Deputy Determination with the Appeals Examiner. The Appeals Examiner conducted a telephonic hearing on April 6, 2006, and issued an opinion on April 7, 2006. The Appeals Examiner found that, although Ms. Opitz did not voluntarily leave her place of employment, she had been discharged due to misconduct in connection with work. *See* Appeals Examiner Opinion at 2. Further, finding that Ms. Opitz "did not testify [at the hearing] to sufficient mitigation of her conduct," the Appeals Examiner concluded that Ms. Opitz was disqualified from receiving unemployment benefits in accordance with Va. Code § 60.2-618(2). *See id.* at 3. In pertinent part, that section provides:

> *An individual shall be disqualified for benefits* upon separation from the last employing unit for whom he has worked 30 days or 240 hours or from any subsequent employing unit:

2.a. For any week benefits are claimed until he has performed services for an employer (i) during 30 days, whether or not such days are consecutive, or (ii) for 240 hours, and subsequently becomes totally or partially separated from such employment, *if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.*

Va. Code § 60.2-618(2) (emphasis added).

On May 1, 2006, Ms. Opitz filed a timely appeal of the Appeal Examiner's findings to the Commission. A hearing was held on August 17, 2006, and the Commission issued its opinion on September 27, 2006. The Commission adopted the Appeals Examiner's finding of facts, with the exception of two sentences, and affirmed the Appeal Examiner's decision. *See* Commission Opinion at 3. The Commission amended the last sentence in the fifth paragraph of the Appeal Examiner's factual findings to read, "The employer had informed the agency that the claimant was considered to have resigned due to a lack of contact for further temporary assignments." The Commission also eliminated the last paragraph of the Appeal Examiner's factual findings, which had read, "Although duly notified of the hearing, the employer did not participate." It is to this Commission finding that Ms. Opitz now appeals.

### Standard of Review

Upon reviewing a Commission determination, the Court must "consider the evidence in the light most favorable to the finding by the Commission." *Bell Atl. Network Servs. v. Virginia Employment Comm'n*, 16 Va. App. 741, 745 (1993). If supported by evidence and not obtained by fraud, the Commission's findings of fact are conclusive upon this Court and, therefore, binding upon appeal. *See id.; see also* Va. Code § 60.2-625. Where such a standard is met, this Court's review of a Commission's determination "shall be confined to questions of law." Va. Code § 60.2-625. "The [Commission's] findings may be rejected only if, in considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Craft v. Virginia Employment Comm'n*, 8 Va. App. 607, 609 (1989).

Because the Commission is an administrative agency that regularly enforces the statute pertaining to unemployment benefits, this Court must also give great weight to the Commission's legal analysis. "It is well settled that, where the construction of a statute has been uniform for many years in the

administrative practice and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts." *Dan River Mills v. Unemployment Compensation Comm'n*, 195 Va. 997, 1002 (1954).

*Analysis and Conclusion*

Here, the Commission's findings are supported by the evidence in the record. Notably, Ms. Opitz admitted during the telephonic hearing with the Appeals Examiner that she knew it was wrong to raise her voice in the call center. *See* Appeals Examiner hearing transcript at 16:2-8. She also admitted that a prior supervisor had asked her to keep her voice down in the call center. *See id.* at 19:12-23. In addition, the corrective action report written by Ms. Opitz's supervisor on November 23, 2005, lists the reason for the report as "insubordination" and "improper conduct." Ms. Opitz acknowledged receipt, by signature, of an employee handbook that clearly stated that "insubordination of any kind towards ... supervisors" would be grounds for discipline, "up to and including unpaid suspension or discharge." Handbook at 11 (signed by Ms. Opitz on page 18). The handbook also explained that the employer could terminate an employee for "violation of policy, performance, or other reasons." *Id.* Finally, Ms. Opitz did not present evidence that her actions were in any way mitigated by the conduct of her supervisor. For instance, the only reason Ms. Opitz gave for her behavior was that she was being harassed. Ms. Opitz explained to the Appeals Examiner that she was referring to "just harassment in general." *See* Appeal Examiner hearing transcript at 9:21. To describe the harassment, Ms. Opitz provided two explanations: (1) that her supervisor failed to provide her with the Thanksgiving work schedule sign-up sheet in a timely manner; and (2) that her supervisor told her she had asked an inappropriate question during a meeting. *See id.* at 16:22-17:6, 17:18-21:21.

After reviewing the evidentiary record, I cannot conclude that a reasonable mind would necessarily come to a different conclusion as to either the Commission's finding that Ms. Opitz was terminated for misconduct or that Ms. Opitz's conduct was not justified by mitigating circumstances. The Commission's factual findings are, therefore, supported by evidence and conclusive upon this Court.

This Court is therefore left with the question of whether the Commission arrived at the proper legal conclusion. The Virginia Supreme Court has held that an "employee is guilty of `misconduct connected with [her] work' when [she] deliberately violates a company rule reasonably designed to protect the legitimate business interests of [her] employer, or when

[her] acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations [she] owes [her] employer." *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 611 (1978). If properly terminated for misconduct connected with work, an employee will be disqualified from receiving benefits unless she can prove mitigating circumstances for her conduct. *See e.g., id.* at 611-12. The employer bears the burden of establishing a *prima facie* case of misconduct by insubordination; after misconduct is proved, the burden shifts to the employee to show mitigating circumstances. *See Southerland v. ABC Stores*, 23 Va. Cir. 263, 265 (1991).

A review of Commission cases reveals that the Commission considers an employee's failure to show reasonable respect to a supervisor as "misconduct connected with work." *See In re Pamela G. Larrabee*, Commission Decision 52458-C (December 16, 1996) (misconduct for employee to tell supervisor to type own changes to report and to argue about content of report); *see also In re Jesse E. Anderson*, Commission Decision 13211-C (April 8, 1980) (misconduct found where claimant failed to acknowledge supervisor's instructions even though supervisor used vulgar language in delivering instruction).

In fact, the case upon which Ms. Opitz relies, *In re Pamela Turner*, recognizes this principle. In *Turner*, the claimant was terminated after she told the plant manager that she was "tired of hearing his lip" and he could terminate her if he did not like what she was doing. *In re Pamela Turner*, Decision 44375-C at 2 (March 29, 1994). There, the Commission applied a five-prong analysis it characterized as being applicable to any case where an employee was "discharged for allegedly participating in conduct which shows a flagrant disrespect for a supervisor's position and authority." *Id.* at 5. They are: (1) the severity of the language used; (2) the quantity of the language used; (3) whether the language was spoken in front of others; (4) whether the employee has a record of misconduct; and (5) whether the language was provoked by the employer. *See id.* at 4-5. Applied here, this five-prong analysis plainly supports the Commission's decision. First, Ms. Opitz's language, while not vulgar, was severe in that she accused her supervisor of harassment, a term that carries serious connotations, including a possible connotation of criminality. Second, she accused her supervisor of harassment during the business hours of a call center and in front of other employees. Third, Ms. Opitz admits that she had previously been told to keep her voice down. Finally, her problematic conduct was not provoked by her supervisor.

Upon appeal, Virginia courts have upheld the Commission's findings of misconduct where an employee fails to show reasonable respect to a supervisor. *See e.g., Southerland v. ABC Stores*, 23 Va. Cir. 263 (1991) (Commission disqualification of claimant benefits upheld where employee dumped tacks on supervisor's floor and spoke to supervisor in loud, rude voice). Moreover, unless the mitigating factors are substantial, Virginia courts have agreed with the Commission that there is no justification for the employee's disrespect. *See id.* at 266 (miscommunication and failure to give notice of meeting are not mitigating factors); *Denisar v. Hauling*, 2004 Va. App. LEXIS 393, *7-8 (2004) ("personal plans do not constitute mitigating factors").

Here, the Commission properly determined that Ms. Opitz's behavior constituted misconduct in connection with her work. While such behavior may not constitute misconduct in every situation, it does here. Ms. Opitz worked in a call center during the altercation that led to her termination. Not only did Ms. Opitz raise her voice at her supervisor and accuse him of harassment, but she did so in a call center where her colleagues were busy answering customer calls. Further, Ms. Opitz's own testimony reveals that she knew her behavior was improper and that she had in fact been previously reprimanded for speaking loudly in the call center, albeit under different circumstances. Moreover, the record is devoid of any evidence that would support Ms. Opitz's contention that her supervisor provoked her behavior. Taking the Commission's findings as conclusive and giving proper weight to its legal analysis, I conclude that Ms. Opitz's behavior demonstrates a willful disregard of her employer's interests, as well as the duties and obligations she owed to her employer. Accordingly, Ms. Opitz's appeal in this matter is denied.