COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference

**UNPUBLISHED**

STEVEN DOUGLAS MOORE

v.      Record No. 0314-20-4

BRIDGET MONICA MOORE                          MEMORANDUM OPINION* BY
                                              JUDGE CLIFFORD L. ATHEY, JR.
BRIDGET MONICA MOORE                          OCTOBER 27, 2020

v.      Record No. 0315-20-4

STEVEN DOUGLAS MOORE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Tashina M. Gorgone (Dennis M. Hottell; C. Dean Kime;
Maddox & Gerock, P.C., on briefs), for Steven Douglas Moore.

Mary C. Huff (Richard J. Colten; Thomas M. Cusick;
Olivia M. F. Bean; Blankingship & Keith, P.C., on briefs), for
Bridget Monica Moore.


Steven Douglas Moore ("husband") and Bridget Monica Moore ("wife") appeal from a

final decree of divorce entered in the Circuit Court of Fairfax County ("trial court").

Consolidating the appeals for purposes of our decision, we affirm on all issues.

Husband assigns five separate errors on appeal. First, he contends that the trial court

erred in apportioning his TSP by failing to classify his premarital contribution as separate

property. Second, he contends that the trial court erred by awarding his wife a $117,717 separate

property interest in her TSP, as that separate figure was not testified to and was only listed in a

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

demonstrative exhibit excluded from evidence. Third, he contends that the trial court erred in setting an alternate valuation date for purposes of equitable distribution. Fourth, he contends that the trial court erred in classifying the balance in his TD Ameritrade -4552 account as marital property. Fifth, he contends that the trial court erred in failing to include his rental property expenditures when determining his income for child support purposes. Finally, he requests an award of attorney's fees and costs incurred in these appeals.

Wife assigns eight errors to the trial court's decision[1]; however, the gravamen of her assignments of error relate to the trial court's failure to categorize and equitably distribute five

---

[1] Wife's assignments of error are as follows:

1. The trial court erred as a matter of law in finding she violated a local discovery rule.

2. The trial court exceeded authority granted under Rule 4:12 in imposing sanctions and excluding wife's evidence in this case.

3. The trial court abused its discretion in imposing the most extreme penalty for her alleged violation of a local discovery rule.

4. The trial court erred as a matter of law in refusing to discharge its statutory duty to classify, value and distribute the entire marital estate in this divorce action, as mandated by Code § 20-107.3.

5. The trial court erred as a matter of law in prohibiting evidence as to title and ownership of five parcels of marital realty ("Excluded Properties")[1] and other evidence necessary to enable it to classify and equitably distribute such properties under Code § 20-107.3, where such relief could be accorded without a finding of value.

6. The trial court erred as a matter of law in enforcing a local discovery rule by imposing sanctions that precluded wife from presenting evidence of value for the Excluded Properties at an equitable distribution trial, where enforcement was inconsistent with Code § 8.01-4, the Rules of the Supreme Court of Virginia, and other decided authority.

7. The trial court erred as a matter of law by enforcing a local discovery rule in a way that abridged her substantive right to statutory equitable distribution of the Excluded Properties, thereby rendering enforcement void *ab initio* under § 8.01-4.

separate parcels of land in dispute as well as the trial court's failure to apportion the marital debt related thereto. Finally, wife requests an award of attorney's fees and costs incurred as a result of these appeals.

BACKGROUND[2]

Procedural History

Husband and wife (collectively, "the parties") married on January 3, 1998. Four children were born of the marriage, one of whom was emancipated at the time of their divorce.

On April 24, 2018, wife filed a complaint for divorce based on cruelty; specifically, she alleged husband's abuse of her and their children. The parties both sought equitable distribution of the marital estate, including classification and valuation of five separate parcels of land. By consent order for *pendente lite* relief dated May 16, 2018, both parties agreed and were "ordered [by the trial court] to not waste or dissipate the marital estate, *pendente lite*." Following a hearing held on August 23, 2019, the trial court awarded wife sole physical custody and the authority to make decisions regarding the children. Wife subsequently filed a motion for alternate valuation date with respect to the parties' joint and individual marital Scottrade investment accounts, a joint Bank of America account, and a joint National Institutes of Health ("NIH") retirement account. The trial on the remaining issues in the case related to equitable distribution began on December 2, 2019, and the trial court entered a final decree of divorce

---

8. The trial court erred as a matter of law by enforcing a local discovery rule in a manner that deprived her of the right to have her claim for equitable distribution of the Excluded Properties heard on the merits, an outcome tantamount to dismissal with prejudice of such claim, thereby rendering enforcement void *ab initio* under § 8.01-4.

[2] Under familiar appellate principles, we summarize the evidence in the light most favorable to the party prevailing on each issue. See Brown v. Brown, 30 Va. App. 532, 535 (1999).

("final decree") on January 24, 2020 based on husband's cruelty. Both husband and wife appeal from the final decree.

## Husband's Appeal

Before and throughout the parties' marriage, both husband and wife were NIH employees eligible to contribute to TSP retirement accounts ("TSP or TSP's"). Throughout the marriage, the parties contributed to their respective TSP. Husband and wife each claimed a separate property interest in their respective TSP.

### Husband's TSP Retirement Account

Husband claimed that his separate, premarital amount of $19,094.61 was in his TSP as of the marriage date. Although husband introduced a statement of the balance in his account just after the parties had married as well as five other random quarterly statements during the marriage,[3] he failed to produce any additional evidence regarding activity in his TSP account from January 9, 1998, until September 30, 2015. As a result, the trial court found that husband had failed to adequately trace a separate interest in his TSP and held that the entire account had, therefore, been converted to marital property, valuing the TSP as of the evidentiary hearing date.

### Wife's TSP Retirement Account

On the date of their marriage, wife had a balance of $22,546 in her TSP. Wife introduced every statement related to her TSP retirement account both prior to the parties' marriage and over the twenty years leading up to the trial. These detailed account statements showed monthly balances, periodic contribution amounts, passive earnings or losses, and growth percentages. Husband failed to offer any contradictory evidence, including the value of wife's separate share

---

[3] Besides the balance summary dated January 8, 1998, after the parties had married, husband only provided sporadic statements from October 1, 2015, to June 30, 2019.

in her TSP. As a result, the trial court held that wife had established a separate interest of $117,717 in her TSP.

*Wife's Motion for Alternate Valuation Date*

After the parties separated, husband removed all the funds from accounts his wife could access and transferred those funds to accounts under his exclusive control. For example, on December 15, 2017, five days after their separation, husband withdrew nearly all of the funds in their joint NIH account -6621. On December 29, 2017, he withdrew all funds from their joint Bank of America account -3470, and, in January 2018, he moved the funds from their joint Scottrade account -5721 into their other joint Scottrade account -6592, thereby depleting the Scottrade -5721 account.

Husband then transferred the balance of their joint Scottrade account -6592, which held solely marital investment funds, into his separate TD Bank account -8229—opened after the parties separated. Husband's counsel acknowledged at trial that husband unilaterally transferred a substantial amount of marital funds into his TD Bank account -8229 post-separation, all without wife's knowledge or consent. Husband even retained some of wife's post-separation employment pay, which had automatically been deposited into a joint account from which husband removed wife's name. Husband sequestered nearly all previous joint marital funds into his name within four months of the parties' separation.

Husband then disregarded the trial court's consent order for *pendente lite* relief in which both parties were "ordered to not waste or dissipate the marital estate, *pendente lite*."[4] He reduced the balance in the marital investment account funds from $745,045 to $113,177 over the twenty-three-month period between the parties' separation date and the date of the trial.

---

[4] Even husband concedes his *improper* use of at least $230,000 in marital funds between the separation date and trial.

At trial, husband summarized what he claimed were nonmarital expenditures he made post-separation without explaining how the other marital funds were used. He never explained why he spent $633,868—nearly four times his annual income of $164,940—in less than two years. He made numerous transfers between accounts, wrote dozens of checks, withdrew large amounts of cash, bought a car for his niece, paid other relatives, paid his 2018 post-separation income taxes, frequented sports and billiards bars, dined out often while maintaining high grocery bills, and made large credit card payments reflecting hundreds of charges. For instance, husband spent $139,393.05 of marital funds to pay his credit card debt without explaining each credit card transaction. Notably, husband withdrew $173,999 in cash and often withdrew thousands of dollars at a time. At trial, he never explained his use of these large cash withdrawals.

The trial court subsequently granted wife's motion for alternate valuation date and used the parties' separation date, December 10, 2017, as the valuation date for the NIH, Bank of America, and Scottrade accounts. The trial court then divided the marital funds equally between the parties based on the balances at that time.

*The Joint Accounts and Marital Funds in Husband's TD Ameritrade -4552 Account*

During their marriage, both husband and wife contributed to marital investment and liquid asset accounts. At separation, the parties had four accounts in their joint names: (1) joint NIH account -6621, with a date of separation balance of $7,940; (2) joint Bank of America account -3470, with a date of separation balance of $3,214; (3) joint Scottrade investment account -5721, with a date of separation balance of $20,765, and (4) joint Scottrade investment account -6592, with a date of separation balance of $135,583. Husband also held two Scottrade

- 6 -

investment accounts in his sole name at separation, both containing marital funds: (1) account -5512, valued at $478,748, and (2) account -5511,[5] valued at $111,946.

Throughout the marriage, wife deposited the parties' bi-weekly paychecks into these various investment accounts, which she understood to contain the parties' joint investments. When she deposited funds into accounts that did not bear her name as owner, Scottrade employees asked her if she wanted to add her name to the accounts. This prompted wife to ask husband to add her name to these accounts; however, he refused. The parties continued making marital deposits into the Scottrade account in which husband claims a separate interest until their date of separation, with a $10,000 deposit of marital funds into Scottrade account -5511 on November 17, 2017.

Although marital funds were contributed to all Scottrade investment accounts, husband still claimed the funds in Ameritrade -4552, which had been transferred multiple times, as his separate property. His Ferris Baker Watts ("FBW") account initially held these funds, but husband introduced only one monthly statement, dated shortly after the parties' marriage, and six other sporadic statements over an eight-year period. Husband submitted no statements or other evidence to show what happened in FBW -6120 for ten years during the marriage.

When the parties married, FBW -6120 had a net portfolio balance of $27,680. While only two marital 1998 statements were provided, both reflected a deposit and indicated other deposits from that year. Husband offered no evidence that these deposits were not marital. By September 30, 2007, the account balance had reached $171,098.63. Husband presented no evidence whether this balance had passively increased or had resulted from further marital

---

[5] Scottrade -5511 was transferred to Scottrade -6810 in December 2017. In February 2018, TD Ameritrade acquired Scottrade, and all of the Scottrade accounts became TD Ameritrade. Scottrade -5511/-6810 became TD Ameritrade -4552. The trial court referred to the account as Scottrade -5511/TD Ameritrade -4552.

deposits. From FBW, husband transferred these funds into Scottrade -5511, then into his newly opened Scottrade account -6810. For this account, husband only introduced a transaction summary reflecting the transactions between the opening of the account through its closing when Scottrade became TD Ameritrade.

The transaction summary from Scottrade and wife's testimony reflected routine deposits of marital money into this account when the parties received their bi-weekly pay. In addition to $10,000 of marital funds deposited a month before separation, the transaction history also showed a pattern of marital deposits from 2008 to 2011 totaling $65,500, consistent with wife's testimony that the parties routinely deposited marital funds in the Scottrade -5511/TD Ameritrade -4552 account. Husband presented no evidence these deposits came from separate sources.

There were also numerous withdrawals from Scottrade -5511/TD Ameritrade -4552 during the marriage that husband did not account for in his evidence. For instance, large checks from this account had been negotiated in the following amounts: $8,009.68 on December 5, 2017, $20,000 and $25,000 on April 25, 2017, $70,463.39 on December 20, 2016, $20,000 on April 27, 2010, and $19,001 on April 23, 2010. Husband offered no evidence of what impact these withdrawals had on the separate portion he claimed.

After reviewing this evidence regarding TD Ameritrade -4552, the trial court held that the account was marital because husband failed to meet his burden of proving the account should be classified as separate. He could not trace a separate interest when the trial court found that "there were a lot of missing documents," and "[husband] did not provide any evidence of bank statements for over a decade." Furthermore, wife showed that a month before their separation, "$10,000 of marital money was moved into [this] origination account."

*The Investment Properties and Gross Income*

The parties also supplemented their marital income by renting out five properties, three of which were titled in husband's sole name. This was a mutual endeavor with husband and wife completing most repairs to the properties, enlisting the children to help on weekends.

When husband left the marital residence due to a protective order, he moved into one of these properties, where he lived free of rent. After separation, husband continued receiving rental income from four of the properties for his individual use. At trial, husband was receiving $3,240 a month in rent for two of the four properties. Mortgages encumbered none of these properties.

Though husband claimed he had incurred expenses for repairs to these properties, he did not specify the amount of expenses or which ones were ongoing.[6] His testimony was vague and supported, if at all, by sporadic entries in his check register. Husband never presented an accounting or other evidence of his alleged expenses related to these rental properties, such as receipts or invoices. Moreover, husband often paid these claimed expenses to relatives without specifying what work was completed. Although two of these properties were not rented, husband further failed to segregate his alleged costs for the rented properties from expenses for the other properties. He failed to explain which checks related to the rented properties versus the non-rented ones.

Based on the award of sole physical custody of the parties' three minor children to wife, the trial court calculated child support using the sole custody guidelines. Including the rental income husband received, the trial court found that his gross income for child support purposes was $13,745 a month and found that wife's gross income was $13,875.

---

[6] Husband specified his claimed expenses for the first time on brief.

*The Scheduling Order*

After wife filed a complaint for divorce and husband filed an answer, the trial court entered a domestic relations scheduling order ("scheduling order") on August 21, 2018. The scheduling order instructed the parties to "complete discovery, including depositions, by thirty [] days before the applicable trial date," therefore "all interrogatories, requests for production, requests for admissions and other discovery [must have been] served sufficiently in advance of trial to allow a timely response at least [thirty] days before the applicable trial date." The scheduling order further instructed the parties of their "duty to seasonably supplement and amend discovery responses under Rule 4:1(e) of the Rules of the Supreme Court of Virginia." Wife concedes that her answer to husband indicated that the values for the excluded properties were unknown. Wife further concedes that she neglected to update her answer regarding property values before the first day of trial.

*Husband's Motion in Limine to Exclude Wife's Opinions of Value*

On November 27, 2019, husband objected to wife's discovery answers by filing a motion *in limine* to exclude wife's evidence of any real property values due to her failure to update her estimation of the values of the excluded properties in her answers to interrogatories. The trial court heard the equitable distribution evidence on December 2, 2019, beginning with husband's motion *in limine*, which counsel argued as follows:

> Every time that we received a supplemental response to the
> interrogatories . . . I would also review everything as to value. . . . I
> kept waiting for the supplementation so that I could figure out
> what to do. . . . It was [wife's] obligation to amend her answers and
> to put my client on notice of her evidence or opinion as to value if
> that changed. . . . To now allow her to put on evidence contrary to
> her own answers—which is prohibited by the terms of the
> scheduling order . . . [would be] contrary to the fundamental
> fairness of [h]usband who will be prejudiced.

- 10 -

In response, wife argued that husband was asking for a discovery sanction even though he had not sought an order to compel discovery: "He had the right all throughout to ask for a motion [*sic*] to compel if he thought there wasn't an answer to that [valuation] question" in his interrogatories. The trial court responded by noting that husband's interrogatory as to real property values had not gone unanswered: "There is an answer. Unknown, that was the answer. So there's really not a motion to compel [scenario]."

*The Grant of the Motion in Limine and Failure to Determine Value, Title, Ownership, and Classification of the Excluded Properties*

The trial court granted husband's motion *in limine* because wife failed to supplement her discovery responses; accordingly, the trial court refused to allow wife's testimony about the value, title, ownership, or classification of the excluded properties over wife's objection. This decision ultimately foreclosed the equitable distribution of the excluded properties.

In granting the motion *in limine*, the trial court reasoned that wife's sworn answer regarding the value of the excluded properties was that the fair market values were "unknown, [and] to be determined by appraisal." Because "[t]hat was never done and that was never supplemented," the trial judge stated, "I am going to stand by my decision."

After excluding wife's evidence of value by granting husband's motion *in limine*, wife's counsel argued that the equitable distribution statute, Code § 20-107.3, at least required the trial court to determine the legal title as between the parties. The trial court did not consider evidence of title or ownership due to no evidence of value in the record, ultimately finding that classification of the properties was "futile and not required by the [C]ode." Evidence of value did not exist in the record both because of the motion *in limine* and because husband was unable to opine on the values of the excluded properties. This was due to "costly issues with the roofing, chimney, electric, plumbing, HVAC, appliances, carpeting, and structure."

- 11 -

The trial court entered the final decree of divorce on January 24, 2020, based on husband's cruelty. After the trial court denied post-trial motions, this appeal followed.

STANDARD OF REVIEW

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Niblett v. Niblett, 65 Va. App. 616, 622 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258 (2003)). Accordingly, we "'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Congdon, 40 Va. App. at 258 (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002)). Absent an abuse of discretion, we will not disturb the trial court's evidentiary rulings, Castillo v. Loudoun Cnty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018), or sanctions, Nolte v. MT Tech. Enterprises, LLC, 284 Va. 80, 90 (2012). Furthermore, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Anderson v. Anderson, 29 Va. App. 673, 686 (1999) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)).

ANALYSIS

Husband's Appeal

I. *Classification of Husband's TSP as Marital*

Husband first contends that the trial court erred in apportioning his TSP by failing to classify his premarital funds as separate property and implicitly finding he had to trace these funds. We disagree.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32 (2005). "Separate property" includes "all property,

real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1)(i).

"Under Code § 20-107.3(A)(1), the portion of [a] retirement plan attributable to [] efforts before the parties married is presumed to be [] separate property." Frazer v. Frazer, 23 Va. App. 358, 370 (1996). However, property is presumably marital "in the absence of satisfactory evidence that it is separate" under Code § 20-107.3(A)(2):

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

By statute, a trial court must classify the parties' property as part marital and part separate under certain circumstances. See Code § 20-107.3(A)(3)(b) ("In the case of any pension, profit-sharing, or deferred compensation plan or retirement benefit, the marital share as defined in subsection G shall be marital property."). However, "[t]he party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component. If [by] a preponderance of the evidence [he or she] fails to do so, the property remains fully marital." Hamad v. Hamad, 61 Va. App. 593, 602 (2013) (citation omitted).

In Frazer, we interpreted Code § 20-107.3(A)(2) to mean that "[t]he portion of [a] retirement plan earned during the marriage is presumed marital unless [the earning party] produces satisfactory evidence that it is separate." 23 Va. App. at 370. There, husband's employment began before the marriage, and he continued working for this employer for six years after the parties married. Id. "Husband estimated that the 1984 value of [his] retirement plan was $40,000 and that the current value of the plan [wa]s $72,000. However, husband failed to show which portion was earned before the marriage (separate) and which portion was earned during the marriage (marital)." Id. at 370-71. Because husband failed to show that the $72,000

- 13 -

was his separate property and therefore failed to meet his burden, we found that the trial court erred in awarding him this amount and reversed the trial court's judgment. Id. at 371, 381.

Similarly, husband here failed to meet his burden of showing what portion of his TD Ameritrade -4552 account was separate when he failed to show "which portion was earned before the marriage (separate) and which portion was earned during the marriage (marital)." See id. at 370-71.

Contrary to his claim that a separate, premarital amount of $19,094.61 was in the account as of the marriage date, the only account statements husband produced were dated after the parties were married. In addition, husband failed to introduce account statements showing the account activity during most of the marriage, preventing the trial court from tracing any separate premarital contributions even if they existed.

Because the trial court presumes that property is marital "in the absence of satisfactory evidence that it is separate" under Code § 20-107.3(A)(2), the trial court did not err in finding that husband's TSP is marital property.

Finally, husband's claim that the trial court considered waste when valuing his TSP is inaccurate. The trial court valued the asset as of the evidentiary hearing date, and the record does not indicate that the trial court considered any dissipation of husband's TSP.

## II. *Classification of Wife's TSP as Separate*

Husband also contends that the trial court erred in awarding wife a $117,717 separate interest in her TSP because "that separate figure was not testified to and only listed in an exhibit excluded from evidence." We disagree.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney, 45 Va. App. at 31-32. "Separate property" includes "all property, real and personal,

- 14 -

acquired by either party before the marriage." Code § 20-107.3(A)(1)(i). "Under Code § 20-107.3(A)(1), the portion of [a] retirement plan attributable to [] efforts before the parties married is presumed to be [] separate property," and "[t]he portion of [a] retirement plan earned during the marriage is presumed marital unless [the earning party] produces satisfactory evidence that it is separate." See Frazer, 23 Va. App. at 370.

Here, unlike her husband, wife provided extensive evidence about every transaction in her retirement account, all passive changes in the value of the account, and the periodic rates of growth in her TSP from before the parties' marriage until immediately before trial.

Husband's reliance on the trial court's exclusion of a demonstrative exhibit is misplaced when extensive evidence had already been admitted in evidence, permitting the trial court to calculate her separate property interest of $117,717. Specifically, the trial court had admitted—without objection—all statements for wife's TSP for the inclusive period of November 1, 1997, before the parties married, through September 30, 2019, just before trial. These statements, which showed wife's balances, periodic contribution amounts, passive earnings or losses, and even growth percentages, allowed the trial court to determine her separate share's present value. Furthermore, husband offered no contrary evidence of value for wife's separate share.

For all of these reasons, there is evidence to support the trial court's classification of this account as part separate. Thus, the trial court did not err in classifying and awarding an interest in wife's TSP of $117,717 to wife as separate property.

### III. *Application of an Alternate Valuation Date*

Husband also contends that the trial court "erred in its application of an alternate valuation date" because "sufficient evidence and testimony was presented allowing for the tracing of permissible or non-permissible uses, such that the application of an alternate valuation date was unnecessary and inequitable." Specifically, husband claims that (1) his cash

- 15 -

withdrawals were not waste, and (2) the trial court's application of an alternate valuation date was inequitable. We disagree.

Recognizing that "the trial court's job is a difficult one, [] we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case" when we review an equitable distribution award. Wright v. Wright, 61 Va. App. 432, 463 (2013). This Court reverses the determination of a valuation date only if the trial court abused its discretion, and "only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. at 463-64 (quoting Robbins v. Robbins, 48 Va. App. 466, 482 (2006)).

"The value of the assets determined as near as practicable to the date of trial will usually be the most current and accurate value available." Id. at 463 (quoting Gaynor v. Hird, 11 Va. App. 588, 593 (1991)). However, our General Assembly has recognized that "good cause" may exist to justify the trial court's use of an alternate valuation date, Code § 20-107.3(A), such as when one spouse wasted or dissipated marital assets, Wright, 61 Va. App. at 464.

Where one spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage when it is experiencing an irreconcilable breakdown, dissipation occurs. Clements v. Clements, 10 Va. App. 580, 586 (1990). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Id. "If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result." Id. at 587 (emphasizing that "the burden is on the party who last had the funds" to establish proper purpose); see also Booth v. Booth, 7 Va. App. 22, 28 (1988) ("[E]quity can only be accomplished if the party who last had the funds is held accountable for them.").

In <u>Alphin v. Alphin</u>, 15 Va. App. 395, 402 (1992), husband was similarly the party who last had the funds, so he had to establish that the funds were spent for a proper purpose. There, we found that the trial court did not err in ruling that husband did not dissipate marital assets based on the credible evidence husband submitted; specifically, "a detailed list of funds that the parties held on the date they separated and a complete list of each expenditure that he made from these assets." <u>Id.</u> at 403. Notably, husband's detailed evidence proved that "*all* the expenditures were for a proper purpose." <u>Id.</u> (emphasis added); <u>see also</u> <u>Anderson</u>, 29 Va. App. at 694-95 (finding that the trial court did not err in ruling that husband did not waste marital funds when he "submitted financial documentation supporting each and every expenditure," including "two lists detailing each expenditure as well as copies of various financial statements, receipts, money orders, and cashier's checks, which verified husband's lists and testimony regarding how these funds were spent").

Husband here failed to show that each expenditure of marital funds after the parties separated was for a proper purpose. It was undisputed that husband took control of hundreds of thousands of dollars of marital funds after the separation and spent most of those monies before trial; he conceded his *improper* use of at least $230,000. Moreover, in the twenty-three-month period between the parties' separation and the trial, husband spent $633,868, which was about four times the amount of his annual income. He failed to submit a detailed list of each expenditure's amount and purpose after making numerous transfers between accounts, withdrawing large amounts of cash, writing dozens of checks, and making large credit card payments reflecting hundreds of charges. Instead, he offered vague testimony, claiming that his shopping sprees, payments or purchases for relatives, and frequent visits to restaurants and sports and billiards bars were proper expenditures. For example, he spent $139,393.05 of marital funds to pay his credit card debt without explaining each credit card transaction. He then summarized

what he claimed were nonmarital expenditures, assuming that the trial court would believe that other marital funds were properly spent.

Unlike the husband in Alphin, husband here did not submit "a detailed list of funds that the parties held on the date they separated and a complete list of each expenditure that he made from these assets" to prove that the expenditures "were for a proper purpose." 15 Va. App. at 403. Without explanation, husband spent four times his annual income of $164,940 in less than two years. When no evidence showed that his expenditures "were for a proper purpose," it was not "inequitable," as husband alleges, to apply an alternate valuation date and certainly not an abuse of the trial court's discretion.

IV. *Classification of Husband's TD Ameritrade -4552 as Marital*

Husband also contends that the trial court "erred in [] finding husband's TD Ameritrade -4552 account [] marital, as husband provided sufficient evidence and testimony to meet his burden with regards to the account's classification as separate." We disagree.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney, 45 Va. App. at 31-32. "Separate property" includes "all property, real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1)(i). Virginia courts must presume that property is marital "in the absence of satisfactory evidence that it is separate" under Code § 20-107.3(A)(2).

By statute, a trial court must classify the parties' property as part marital and part separate under certain circumstances. See Code § 20-107.3(A)(3)(b) ("In the case of any pension, profit-sharing, or deferred compensation plan or retirement benefit, the marital share as defined in subsection G shall be marital property."). However, "[t]he party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component. If

- 18 -

[by] a preponderance of the evidence [he or she] fails to do so, the property remains fully marital." Hamad, 61 Va. App. at 602 (citation omitted).

Like the husband in Frazer who failed to show which portion of his retirement account was earned before the marriage and which portion was earned during the marriage, husband here failed to meet his burden of showing what portion of his TD Ameritrade -4552 account was separate. See 23 Va. App. at 370-71. Contrary to husband's claim that he met his burden of proof, we agree with the trial court's finding that husband failed to do so when "there were a lot of missing documents" and, in fact, "[husband] did not provide any evidence of bank statements for over a decade." When he only produced sporadic statements from the account dated after the parties had married, the trial court could ascertain no current value of husband's interest. Notably, the trial court also found that wife proved a $10,000 marital deposit to this account a month before their separation. Because we must presume that property is marital "in the absence of satisfactory evidence that it is separate" under Code § 20-107.3(A)(2), the trial court did not err in finding that husband's TD Ameritrade -4552 account is marital property.

For all of these reasons, there is evidence to support the trial court's classification of this account as marital property. Thus, the trial court did not err in classifying the account as such.

V. *Gross Income Calculation for Child Support Purposes*

Husband further contends that the trial court "erred in its failure to account for [his] expenditures related to his rental properties when determining husband's income for child support purposes." We disagree.

Determining income for child support purposes rests "within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Tidwell v. Late, 67 Va. App. 668, 678 (2017) (quoting Rinaldi v. Dumsick, 32 Va. App. 330, 334 (2000)). "[U]nless it appears from the record that the circuit court judge has

- 19 -

abused his [or her] discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Id. (quoting Niblett, 65 Va. App. at 624).

Code § 20-108.2(C) controls this issue, stating in pertinent part that "'gross income' means all income from all sources, and shall include . . . rental income . . . ." However, "[g]ross income shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." Id.

After including $3,250 per month of rental income, which husband receives from two rental properties, the trial court found that husband's income is $13,745 per month for child support purposes. No cases stand for the proposition that husband's claimed rental property expenses are "reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business" within the meaning of Code § 20-108.2(C). We further decline husband's request to expand the ruling in Dega v. Vitus, No. 2512-06-4 (Va. Ct. App. Aug. 14, 2007) (requiring consideration of any mortgage expense paid on a property when determining the party's income), to include other expenses associated with owning a rental home like maintenance, repairs, taxes, and utilities.

For all of these reasons, there is evidentiary support for the trial court's finding that husband's income is $13,745 per month for child support purposes. Thus, we find no error in this ruling.[7] We now proceed to the arguments wife presents on appeal.

---

[7] We note that, despite husband's claim, the trial court never imputed any rental income from any unrented property to him, so related expenses cannot be used as an offset to, or deduction from, rental income that was not found.

I. *Violation of a Local Discovery Rule*

First, wife argues that the trial court erred as a matter of law in finding she violated a local discovery rule. We disagree.

One purpose of the discovery process is "to disclose all relevant and material evidence *before* trial in order that the trial may be an effective method for arriving at the truth and not 'a battle of wits between counsel.'" Little v. Cooke, 274 Va. 697, 717 (2007) (emphasis added) (quoting Guilford Nat'l Bank of Greensboro v. Southern R. Co., 297 F.2d 921, 924 (4th Cir. 1962)). We agree with husband that implicit in this purpose is a mandate that discovery must be supplemented sufficiently before trial for all parties to have an opportunity to review and verify the discovery responses. This ensures that the parties are prepared to provide the trial court with the information and argument necessary to arrive at a just and equitable decision.

To ensure that all parties are prepared at trial, trial courts have the authority to impose an explicit discovery deadline or cutoff consistent with the Rules of the Supreme Court of Virginia. See Code § 8.01-4 (authorizing the trial court to prescribe rules promoting order and efficiency). The trial court did so in this matter through the scheduling order, which required the parties to complete discovery and update all responses to financial discovery thirty days before December 2, 2019, the scheduled trial date. The scheduling order further advised the parties of the "duty to seasonably supplement and amend discovery responses pursuant to Rule 4:1(e) of the Rules of the Supreme Court of Virginia."

Wife concedes that she answered that the fair market values of the excluded properties were "unknown, to be determined by appraisal." Nonetheless, she contends that she complied with discovery by otherwise making "the additional or corrective information . . . known to [husband] during the discovery process or in writing" under Rule 4:1(e)(2). Specifically, wife

- 21 -

contends that husband was otherwise on notice of the fair market values when she had proposed written stipulations of fact to husband, which suggested values for the excluded properties, and provided copies of tax assessment values to husband with other documents supporting her proposed stipulations. We disagree.

Both parties were represented by counsel in this case. Wife never provided husband with a definitive answer to his interrogatory request regarding valuation until the morning of trial. Based on wife's production of the tax assessment values and her participation in negotiating a stipulation, we find that wife was aware of her obligation under the interrogatory. We further find that she and her counsel failed to engage an appraiser or commit to a value until trial—to the detriment of husband.

The trial court properly found that wife's sworn answer regarding the value of the five excluded properties was that the fair market values were "unknown, to be determined by appraisal." The trial court further found that wife never supplemented the values and properly found that wife violated the scheduling order. Although wife further contends that she gave notice to husband in the form of *Brandenburg* calculations, she did not do so until November 22, 2019, after the cutoff the scheduling order imposed. Wife's "unknown" answer and representation that the values would be determined by appraisal, which husband fairly relied upon, were not formally updated until after the trial began. By the time husband was aware of her position on the values of these excluded properties, it was too late for him to review and act on this information.

For all of these reasons, the trial court did not err in finding that wife violated the scheduling order.

## II. *Excluding Wife's Evidence as a Sanction and Severity of the Sanction*

Wife's second and third assignments of error allege that the trial court erred by "exceeding [its] authority . . . under Rule 4:12 . . . in imposing sanctions and excluding [her] evidence" and "abusing its discretion in imposing the most extreme penalty for [her] alleged violation of a local discovery rule." We disagree.

Wife specifically contends that the trial court lacked the authority under Rule 4:12 to impose sanctions for her discovery violation and that, assuming *arguendo* it had such authority, the sanctions imposed constituted an abuse of discretion. Moreover, she contends that although Rule 4:12(b)(2) authorizes courts to impose sanctions for discovery violations, those sanctions may only be imposed after a party obtains an order compelling discovery under the provisions of Rule 4:12(a). Wife correctly notes that husband never sought or obtained an order compelling discovery. Consequently, wife maintains, "the [c]ourt exceeded its authority under Rule 4:12 to impose sanctions for a failure to formally supplement an interrogatory answer" and thus "committed an error of law." Further, wife contends that even if the court acted within its sanctioning authority, "[t]he sanction imposed was too harsh to be just" because her failure to supplement her interrogatories was inadvertent, there was no surprise or prejudice to husband, and husband was "culpab[le] in staging his Motion *in Limine* to unjustly gain strategic and financial advantage." Thus, wife argues that the sanction constituted an abuse of discretion.

Wife's arguments are premised upon a misconception of the events at trial. While wife is correct in noting that husband did not seek an order compelling discovery under the provisions of Rule 4:12(a), the trial court did not act under the rule when it prevented her from testifying as to her property valuations. As noted above, part of wife's argument against husband's motion *in limine* was that husband was asking for a discovery sanction even though he had not sought an order to compel discovery: "He had the right all throughout to ask for a motion [*sic*] to compel if

he thought there wasn't an answer to that [valuation] question" in his interrogatories. The trial court responded by noting, correctly, that husband's interrogatory as to real property values had not gone unanswered: "There is an answer. Unknown, that was the answer. So there's really not a motion to compel [scenario]."

Accordingly, the trial court did not exclude wife's testimony as to property valuations by applying Rule 4:12, and thus did not "exceed[] its authority" under the Rule and commit the error of law alleged by wife. Instead, in response to husband's motion *in limine*, the trial court excluded wife's testimony under its general discretion to admit or exclude evidence. See, e.g., Boone v. Commonwealth, 285 Va. 597, 602 (2013) (noting a trial court's discretion to exclude evidence as "repetitious and cumulative" or when "its prejudicial effect substantially exceeds its probative value").

Here, husband argued that in preparing for trial, he had been entitled to rely upon wife's consistent answer throughout her pretrial interrogatory responses that, in her estimation, the valuations of the six real estate parcels were "[u]nknown." He further argued that allowing wife's testimony to the contrary at trial would constitute surprise, thus prejudicing him and defeating the purposes of the discovery process. On this record, it cannot be said that granting husband's motion *in limine* and prohibiting wife from testifying as to specific property valuations at trial amounted to an abuse of discretion.[8]

---

[8] Husband supports his argument by citing Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288 (1998), in which our Supreme Court affirmed a trial court's grant of a defendant's motion *in limine* to exclude a witness. In Bradley, the plaintiff consistently represented throughout discovery that the witness did not have knowledge of anything material to the issues before the court. Id. at 291-92. Consequently, the defendant forwent deposing the witness. Id. After the expiration of the court-ordered discovery cut-off date, the plaintiff submitted late answers to interrogatories indicating that the witness did have material knowledge. Id. at 292. In excluding the witness, the trial court ruled that the defendant would have been "misled" had the witness been allowed to testify. Id. In affirming the trial court, our Supreme Court held that the decision to exclude the witness had not been an abuse of discretion. Id. at 292-93. Thus, our

- 24 -

Regarding wife's further argument—that the penalty imposed by the trial court was an abuse of discretion because it was too harsh to be just, arose from her inadvertent oversight in failing to timely supplement her interrogatory answers, and derived from procedural skullduggery on the part of husband—that argument simply asks the panel to revisit the trial court's factual findings and balancing of the equities in granting husband's motion *in limine*. For the same reasons noted above, there was no abuse of discretion by the trial court in granting husband's motion.

III. *Classification, Valuation, and Distribution of the Marital Estate Under Code § 20-107.3*

Fourth, wife argues that the trial court erred as a matter of law in refusing to discharge its statutory duty to classify, value, and distribute the entire marital estate in this divorce action, as mandated by Code § 20-107.3. We disagree.

The trial court has broad discretion in fashioning an equitable distribution award. Bowers v. Bowers, 4 Va. App. 610, 616 (1987). Under our equitable distribution statute, trial courts must ascertain the value and ownership of the parties' real and personal property upon request of either party. Code § 20-107.3(A); see also Bowers, 4 Va. App. at 616-17 (explaining that "shall" in this statute creates a mandate). However, "litigants have the burden to present evidence sufficient for the [trial] court to discharge [this] duty." Bowers, 4 Va. App. at 617. "Virginia's trial courts may, without doing violence to the statute, make a monetary award without giving consideration to the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so." Id. at 618.

---

Supreme Court has previously determined that it is within a trial court's discretion to exclude witness testimony upon a motion *in limine* where, as here, the witness seeks to present testimony at variance with their discovery period representations.

- 25 -

Under <u>Bowers</u>, wife had a duty to present evidence sufficient for the trial court to discharge its statutory duty. Wife's failure to supplement her interrogatory answer—despite having eighteen months to do so—shows a lack of diligence in providing the necessary valuation evidence. Because of this lack of diligence, the trial court could not discharge its statutory duty.

Thus, the trial court did not err as a matter of law by failing to classify, value, and distribute the marital estate where wife failed to adduce evidence sufficient for the trial court to perform these functions.

IV. *Exclusion of Title and Ownership Evidence of Five Marital Properties*

Fifth, wife argues that the trial court erred as a matter of law in prohibiting evidence as to title and ownership of the excluded properties and other evidence necessary to enable it to classify and equitably distribute such properties under Code § 20-107.3. We disagree.

Code § 20-107.3 directs trial courts to "determine the ownership and value of all real and personal property of the parties." <u>Bowers</u>, 4 Va. App. at 617 (quoting <u>Hodges v. Hodges</u>, 2 Va. App. 508, 516 (1986)). However, the trial court need not consider "the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so." <u>Id.</u> at 618.

As discussed in the preceding section, wife's lack of diligence left the trial court unable to classify, value, and equitably distribute the excluded properties under Code § 20-107.3. As a matter of law, we find no error in the trial court's prohibition of evidence as to the title and ownership of the excluded properties.

V. *Enforcement of a Local Discovery Rule Contrary to Code § 8.01-4, Contrary to Substantive Rights, and Tantamount to a Dismissal with Prejudice*

Wife's last three assignments of error allege that the trial court "erred as a matter of law in enforcing a local discovery rule" by imposing sanctions that "precluded [her] from presenting evidence of value." In turn, wife alleges that this "enforce[ment] of a local discovery rule . . . abridged [her] substantive right to statutory equitable distribution of the Excluded Properties" and "deprived [her] of the right to have her claim for equitable distribution of the Excluded Properties heard on the merits." Specifically, wife contends that the trial court's "Scheduling Order requirement directing the parties to update financial discovery responses [thirty] days before trial was imposed by a local rule of the . . . [c]ourt" and that "[w]hile [Code] § 8.01-4 authorizes circuit courts to establish docket control procedures, no local rule is to be exercised in a manner that impinges on [Code] § 8.01-4 or other statute, Supreme Court Rule, or decided case law." Citing other provisions of Code § 8.01-4, wife argues that "[e]nforcement of a local rule of court in a manner that violates any of the stated prohibitions is invalid."

Code § 8.01-4 provides, in its entirety, as follows:

> The district courts and circuit courts may, from time to time, prescribe rules for their respective districts and circuits. Such rules shall be limited to those rules necessary to promote proper order and decorum and the efficient and safe use of courthouse facilities and clerks' offices. No rule of any such court shall be prescribed or enforced which is inconsistent with this statute or any other statutory provision, or the Rules of Supreme Court or contrary to the decided cases, or which has the effect of abridging substantive rights of persons before such court. Any rule of court which violates the provisions of this section shall be invalid.

> The courts may prescribe certain docket control procedures which shall not abridge the substantive rights of the parties nor deprive any party the opportunity to present its position as to the merits of a case solely due to the unfamiliarity of counsel of record with any such docket control procedures. No civil matter shall be dismissed with prejudice by any district or circuit court for failure to comply with any rule created under this section.

- 27 -

Here, wife defines the trial court's interpretation and enforcement of the discovery provisions in its scheduling order as an "[e]nforcement of a local rule of court" to argue that her substantive rights were abridged in a manner prohibited by Code § 8.01-4. However, it is clear that this is a meritless conflation of the substantive provisions of a court order with the administrative structures that authorize and guide the preparation of that order. The Fairfax County Circuit Court's rules of court require a scheduling conference and provide that, at the conference, "an Order will be entered establishing, among other things, a trial date . . . and discovery cut-off dates." Fairfax Cir. Ct. Domestic Case Mgmt. Instructions, CCR-H-73(I)(14). Further rules of court provide additional detail about the course of proceedings at the scheduling conference and what subjects should be addressed in the scheduling order. See Fairfax Cir. Ct. Instructions, CCR-D-20. However, none of the court's rules mandate the specific discovery provisions included in the case scheduling order here.

Thus, it cannot be said that, in interpreting and enforcing the substance of its scheduling order, the trial court was "[e]nforc[ing] a local rule of court" or "enforcing a local discovery rule" as alleged by wife. Nor can it plausibly be argued that the discovery provisions in the trial court's scheduling order were "rules" as contemplated by Code § 8.01-4. Those provisions were neither "rules necessary to promote proper order and decorum and the efficient and safe use of courthouse facilities and clerks' offices," nor were they "docket control procedures." Code § 8.01-4. Instead, they were provisions that the rules authorized to be drafted, imposed, and enforced to govern the parties' conduct during litigation—not the local rules themselves. Consequently, the discovery provisions at issue here were not rules as contemplated by Code § 8.01-4.

For all of these reasons, wife's sixth, seventh, and eighth assignments of error lack merit.

VI. *Attorney's Fees and Costs on Appeal*

Husband and wife request attorney's fees and costs incurred in these appeals. "[W]hether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). Exercising that discretion after reviewing the record before us, we decline to award attorney's fees and costs to either party.

CONCLUSION

For the foregoing reasons, we find no error with respect to each of the assignments of error. Therefore, we affirm the trial court's judgment.

Affirmed.